## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JENNIFER M. REAVES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | |
| | ) | |
| **CITY OF MONTGOMERY,** | ) | **PLAINTIFF DEMANDS A** |
| | ) | **TRIAL BY STRUCK JURY** |
| **Defendant.** | ) | |

## COMPLAINT

## INTRODUCTION

Plaintiff Jennifer M. Reaves ("Plaintiff" or "Reaves") brings this action for legal and equitable relief to address unlawful employment practices and violations of Federal and State law by Defendant, City of Montgomery ("Defendant" or "the City").

## JURISDICTION AND VENUE

1.    This Complaint seeks legal and equitable relief to redress Defendant's unlawful violations of Plaintiff's rights secured by the following:

a)    Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991;

b)    42 U.S.C. § 1981, *et seq.*; and

c)    The laws of the State of Alabama.

2.    Federal subject matter jurisdiction exists pursuant to:

a)    28 U.S.C. §§ 1331, 1337, and 1343(4);

b)    Title VII, 42 U.S.C. § 2000e-5(f)(3); and

c)    Title I of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981, *et seq.*

3.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391 because the unlawful discriminatory practices alleged in this Complaint occurred in Montgomery County in the Middle District of Alabama.

## PARTIES

4.    Plaintiff Jennifer M. Reaves is a White female and at all relevant times was a resident of Montgomery County, Alabama. Reaves has been employed for 26 years with the City of Montgomery Police Department.

5.    Defendant City of Montgomery is a municipal corporation in Montgomery County, Alabama, organized and existing under the laws of the State of Alabama.

6.    Defendant City of Montgomery was Reaves' employer during the times pertinent to this lawsuit, and employs at least 15 persons within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## NATURE OF ACTION

7.    Reaves alleges that Defendant City of Montgomery engaged in unlawful employment practices and other acts of intentional discrimination, harassment and retaliation.

8.    This action seeks to redress these grievances resulting from the unlawful actions of Defendant, its agents, servants, and employees, committed with respect to Reaves' employment and otherwise; and for a permanent injunction restraining Defendant from discriminating against Reaves and others similarly situated on account of race, sex and retaliation.

9.    Reaves seeks all relief to which she is entitled, including reinstatement, back pay, front pay, compensatory damages, punitive damages, plus costs, interest, and attorneys' fees incurred in the bringing of this action.

## ADMINISTRATIVE PROCEDURES

10.    On August 19, 2021, within 180 days of the acts of discrimination of which she complains, Reaves filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  **(See Exhibit A.)**

11.    On April 25, 2022, the EEOC issued a Notice of Right to Sue. **(See Exhibit B.)**

12.    On January 28, 2022, Reaves filed a Notice of Claim for Damages with the City of Montgomery, pursuant to the provisions of §§ 11-47-23 and 11-47-192 of the Code of Alabama, 1975. (**See Exhibit C**).

13.    All prerequisites for bringing this action have been met.

## STATEMENT OF FACTS

14.    Jennifer Reaves, a Caucasian female, has served with the City of Montgomery Police Department for 26 years, and in July 2020 was promoted to the position of Deputy Chief of Operations.

15.    Reaves was responsible for supervising approximately two hundred police officers and in the position reported to the Chief of Police.

16.    Reaves had the most seniority with the Montgomery Police Department of the senior command staff.

17.    Prior to Reaves' promotion, the position of Deputy Chief of Operations had always been filled by a male police officer.

18.    Beginning in October 2020, Reaves was tasked with the investigation of approximately 12 police officers for policy violations, ethics violations, fraud and theft involving second jobs the officers were working.

19.    The results of Reaves' investigation were forwarded to the Chief of Police and the Investigator for the City.

20.    All 12 officers were found guilty of various violations of varying degrees.

21.    Five officers reporting to Reaves were found guilty of ethics violations.

22.    The remaining officers reported to Deputy Chief of Staff Zedrick Dean ("Dean"), a Black male. The remaining officers under Dean were either not guilty of ethics violations or the violations were considered minor.

23.    The five officers reporting to Reaves should have been terminated because of the totality of all the evidence discovered supporting the various ethical and departmental violations.

24.    After completing the investigation of the officers, Reaves was targeted by agents and employees of the City for regular and ongoing harassment, discrimination and insubordination, including employees and managers of the Montgomery Police Department with whom Reaves worked on a daily basis.

25.    City of Montgomery employees and managers subjected Reaves to derogatory comments about her race, White, and sex, female.

26.    For instance, Dean actively worked against Reaves, casting her in a negative and false light and portraying her a racist to other police officers because of the investigation she conducted where Black police officers were disciplined.

27.    Dean provided preferential treatment to Black officers after Reaves' investigation was complete, and the Black female officers Dean regularly associates

with includes officers Saba Coleman ("Coleman"), Denise Barnes ("Barnes"), and Tina McGriff ("McGriff"). These officers and Dean would target Reaves for complaints and encourage others to complain about Reaves to set her up for failure and force her to quit or be terminated.

28.    When Reaves would join the group listed in the above paragraph for meetings or park walk-and-talk community engagements, the officers would avoid talking to or engaging in eye contact with Reaves. Upon Reaves' arrival for the meeting or park walk-and-talk, Dean would smirk and look at other officers and then text a message to the group, excluding Reaves but prompting Coleman, Barnes, and McGriff to look at their phones and also smirk and look down or away to exclude Reaves.

29.    Because of their interaction, Reaves would walk alone while other officers engaged in camaraderie, even lunching and meeting together but purposefully treating Reaves as an outsider.

30.    Since December 2020, Montgomery Police Department officers filed at least three complaints against Reaves with City Investigations, fraudulently leveraging Reaves' race as an underlying issue causing division and inciting distress and tension within the force.

31.    Officer Tameka Armstrong ("Armstrong") reported to peer support that she and others were being recruited to file complaints against Reaves and "to make

her life hell." Peer support reported the information to Chief Ernest N. Finley, Jr. ("Finley"), after Armstrong provided permission for the information to be released to Finley. Finley forwarded the information to the City Investigator.

32. Officer Armstrong told Reaves to watch her back that there were officers that had been told to go after Reaves and her job because she was White.

33. After further pressure from Dean, Barnes, Coleman and McGriff, Armstrong indeed filed a complaint against Reaves.

34. Reaves filed a complaint with City Investigations on April 22, 2021, regarding her complaints of race and gender discrimination and hostile work environment. The City ignored Reaves' complaints of discrimination.

35. Reaves' attempts to follow the disciplinary policies and discipline Montgomery Police Department officers were met with opposition by Mayor Steven L. Reed (hereinafter "the Mayor" or "Mayor Reed") and certain police officers.

36. Because Chief Finley had promoted Reaves, he was also met with opposition for promoting a White police officer.

37. Mayor Reed encouraged the Montgomery Police Department officers to complain to the City Council.

38. Mayor Reed told Reaves that she nor anyone representing her could speak to defend the Police Department, Reaves, or Finley at the same meeting.

39.     On or about April 6 2021, the City, its agents and employees, including the Mayor, caused false and fraudulent complaints to be made against Reaves and Finley before the City Council.

40.     The City, its agents, employees, and the Mayor forwarded false and fraudulent complaints against Reaves and Finley to the State of Alabama.

41.     Once the complaints were filed against Reaves and Finley, the City forced Finley to resign his employment with the City.

42.     Finley opposed the forced resignation and did not want to leave his employment as he had done nothing to be removed from his position as Chief of Police. Mayor Reed told Finley he was being removed and it could be easy or difficult, meaning he was either resigning or Reed was terminating him.

43.     Mayor Reed prepared the resignation document for Finley to sign.

44.     The City of Montgomery and the Mayor wanted Finley removed from his position as Chief of Police because they did not approve that Finley enforced Civil Rights laws of the United States and hired, promoted and disciplined employees equitably, regardless of race or gender.

45.     After Chief Finley's forced resignation, the City awarded the position of Interim Chief to Dean. When Dean turned down the position, Deputy Chief Reaves, who ranked equally with Dean and had six more years of experience, should have been selected as acting Interim Chief, but she was not.

46.     Instead, the City awarded Captain Ramona Harris ("Harris") the position of Interim Chief. Captains are not qualified to fill in as Interim Chief due to their lower rank.

47.     The City refused to offer Reaves the Interim Chief position citing the baseless, fraudulent complaints to the State.

48.     Reaves was denied the interim promotion and pay increase due to her complaints of discrimination and harassment.

49.     On August 4, 2021, based on false and fabricated evidence created by the City, the State found that Reaves had committed an unspecified "minor violation" of the Alabama Ethics Act.

50.     The Mayor issued an immediate press release that was circulated to the media including social media to intentionally disparage and defame Reaves and her personal and professional reputation.

51.     On August 10, 2021, during a telephone conversation with Dean, Dean became angry and told Reaves that she worked for him. Reaves responded that they were equal in rank and both have the same position, to which Dean replied, "No, you work for me."

52.     Reaves reported this incident to Interim Chief Harris, a Black female, who advised Reaves they would have a meeting about the incident.

53. Harris and Dean were aware of Reaves' complaint to City Investigations of April 22, 2021.

54. On August 12, 2021, Harris called Reaves into her office and had a video camera pointed at the chair Reaves was directed to sit in. Reaves could see her face being recorded and/or reviewed on Harris' computer screen.

55. Dean was not present, and Harris did not discuss Dean's comments or his harassing and discriminatory behavior with Reaves that was the reason for Reaves' complaint and the meeting.

56. Instead, Harris read from a prepared, typed script and told Reaves that the City was restructuring and the Police Department at this time did not need two Deputy Chiefs. Harris told Reaves she was being reassigned to an open Major position at the jail, that the reassignment had nothing to do with her job performance and that Reaves was not being punished.

57. The reassignment to the jail position as a Major had Reaves reporting directly to Dean, who Deputy Chief Reaves had complained was directly engaged in acts to harass and discriminate and retaliate against her.

58. Reaves told Harris about her reservations working for Dean. Prior to her forced demotion, Reaves had complained numerous times to Harris regarding Dean's adverse treatment and targeting of her based on her race, White, and sex, female.

59.     Reaves' demotion was to begin immediately, and Reaves was provided no notice, despite the City's protocol to provide advance notice before reassignment.

60.     The City stripped Reaves of her stipend after her demotion to the open Major position at the jail. Reaves was not told she would lose her stipend and only learned upon receipt of her first paycheck after her demotion that her pay had been substantially reduced.

61.     On August 19, 2021, Reaves filed a Charge of Discrimination with the EEOC.

62.     After Reaves filed her Charge, the City engaged in further acts of retaliation.

63.     Within ten days of filing her Charge, on August 30, 2021, Reaves was issued a "Category B" written reprimand for an incident which allegedly occurred in 2020, one year prior.

64.     On September 1, 2021, the City issued a press release entitled, "Interim Montgomery police chief: Department morale is 'coming back around.'" Reaves' photograph and name were published, stating she had committed a "minor violation" of the Alabama Ethics Act.

65.     The City's press release intentionally disparaged Reaves personally and professionally, and was retaliatory for Reaves engaging in protected conduct ten days prior.

66.   In November 2021, the State of Alabama exonerated and cleared Reaves of all wrongdoing.

67.   As a result of the City's ongoing discrimination and retaliation, Reaves has suffered emotional and physical harm, and her professional reputation has been harmed within the City, the Police Department, and in the community. Reaves was intentionally targeted to force her to quit and to create reasons to terminate her.

68.   The City did not issue any type of press or media release that Reaves was cleared of a violation of the Alabama Ethics Act.

69.   The City and the Mayor's office have remained silent and did not attempt to rectify the professional and reputational harm caused to Reaves. The City did not reinstate Reaves to her former position or restore her pay.

70.   On January 10, 2022, Interim Chief Harris contacted Reaves and, under the guise of routine auto maintenance, required that she immediately relinquish her assigned patrol car. Other officers on leave have not been required to relinquish their assigned police car.

71.   In March 2022, the City installed Darryl Albert as Chief of Police, and Interim Chief Harris was reassigned to Deputy Chief of Operations, Reaves' former position. Reaves was removed from the Deputy Chief of Operations position so the City could award the position to Harris. Harris received a pay increase that exceeds

Reaves' pay, even though Reaves has more experience and tenure with the City. Harris is African-American.

72. On April 22, 2022, Reaves' assigned police car was forcibly removed and towed from her home.

73. In Reaves' assigned police car were several personal items that did not belong to the City and have not been returned to Reaves. Instead of returning her belongings, the City impounded her belongings and have deprived Reaves of her personal property.

**COUNT I**
**42 U.S.C. § 1981 and TITLE VII**
**RACE DISCRIMINATION and RETALIATION**
**FAILURE TO PROMOTE and DEMOTION**

74. Plaintiff adopts and realleges paragraphs 14-72 as if fully recited herein.

75. The City of Montgomery failed to promote Reaves to the position of Interim Chief.

76. After Chief Finley's forced resignation, the City awarded the position of Interim Chief to Deputy Chief Zedrick Dean, a Black male. When Dean turned down the position, Deputy Chief Reaves, who ranked equally with Dean but had six more years of experience, was the person by departmental policies to serve as Interim Chief.

77.    Instead, the City awarded Captain Ramona Harris, a Black female with less experience, less tenure, and lower rank than Reaves, the position.

78.    Reaves had eight more years of experience and tenure than Harris, and six more years of experience and tenure than Dean.

79.    The City refused to promote Reaves to the position of Interim Chief because of her race, White, and because of her prior complaints of race discrimination.

80.    After Reaves complained of unlawful workplace harassment, the City demoted Reaves from Deputy Chief to Major on August 12, 2021, and lowered her pay without cause.

81.    The City demoted Reaves and removed her pay because of her race, White, and in retaliation for her complaints of discrimination.

82.    Reaves' race was a motivating factor that prompted the City of Montgomery to demote her. *See* 42 U.S.C. § 2000e-2(m); *Quigg v. Thomas County School Dist.*, 814 F.3d 1227, 1237-38 (11th Cir. 2016).

83.    Reaves was told by Interim Chief Harris that she was being demoted because the City was restructuring the Montgomery Police Department and did not need two Deputy Chiefs.

84.    Reaves' demotion began immediately and without notice, despite City's protocol to provide notice before an officer is reassigned.

85.    The City reduced the amount of administrative leave due to Reaves. Reaves is limited to only 30 days' leave and is required to use her own sick leave while on leave which is different than how other officers on administrative leave have been treated. Other officers have not had to use their accumulated personal sick leave nor been limited to 30 days' administrative leave.

86.    On August 30, 2021, Reaves was brought in for another interview with Harris and was given a written reprimand for a complaint regarding an officer-involved shooting. The reprimand was labeled "Category B," which meant that if Reaves received another reprimand, it would result in suspension. The incident for this reprimand occurred in 2020.

87.    On January 10, 2022, Harris required that Reaves immediately relinquish her assigned patrol car. Other officers on leave have not been required to relinquish their assigned police car.

88.    On April 22, 2022, Reaves' assigned police car was forcibly removed and towed from her home with her personal effects and belongings.

89.    In Reaves' assigned police car were several personal items that did not belong to the City. Reaves requested the return of her personal items that have great monetary value as well as personal and sentimental value, but her requests were ignored and refused.

90.     In March 2022, the City installed Darryl Albert as the new Chief of Police, and Interim Chief Harris was reassigned to Reaves' former position of Deputy Chief of Operations.

91.     Reaves was not restored to her former position and has been informed she will be returned to the jail. Reaves was removed from the Deputy Chief of Operations position so the position would be given to Harris.

92.     Harris is African-American and has less experience and seniority with the Montgomery Police Department than Reaves.

93.     As a proximate result of Defendant's unlawful discrimination and retaliation, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

94.     Plaintiff seeks declaratory and injunctive relief, an award of lost back pay and front pay, nominal, compensatory and punitive damages, costs, pre-judgment and post-judgment interest, attorneys' fees, and any and all such other relief the trier of fact may assess. Plaintiff seeks reinstatement.

## COUNT II
## TITLE VII
## SEX DISCRIMINATION, HARASSMENT and RETALIATION

95.     Plaintiff adopts and realleges paragraphs 14-72 as if fully recited herein.

96.     In this Count, Reaves alleges that Defendant City of Montgomery,

acting through its agents and employees, discriminated against her because of her sex with regard to her pay and the terms and conditions of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e, *et seq*.

97.    This action seeks to redress grievances resulting from acts of Defendant, its agents, servants and employees committed with respect to Reaves' employment and for a permanent injunction restraining Defendant from maintaining a policy or practice of discriminating and/or retaliating against Reaves and other persons similarly situated on account of sex.

98.    Reaves is female and member of a protected class.

99.    Defendant targeted Reaves based on her sex, female, and subjected her to adverse and discriminatory treatment including denial of promotion, demotion, suspension, loss of pay, and harm to her personal and professional reputation.

100.   Reaves' sex was a motivating factor in Defendant's decision to subject Reaves to adverse employment actions including differing terms of employment to that of her male coworkers. *Quigg v. Thomas County Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

101.   Reaves suffered less preferential terms, conditions, and pay of employment than similarly-situated male employees.

102.   Defendant subjected Reaves to a hostile and gender derogatory work environment on the basis of her sex, female.

103. Defendant's conduct was objectively and subjectively severe or pervasive.

104. Defendant's conduct materially altered Reaves' terms and conditions of employment.

105. Reaves filed a discrimination and harassment complaint with the City.

106. Defendant ignored Reaves and failed to investigate her complaints of discrimination and harassment.

107. Defendant failed to remedy the discriminatory conduct of its agents and employees. Defendant condoned and ratified the conduct of its agents and employees by failing to promote and then demoting Reaves for complaining about discrimination and harassment.

108. Reaves was denied a promotion and then demoted after her complaints of gender discrimination. While Harris, a female, received the promotion, the position was offered to Dean, a male, first. When Harris assumed the position, she acted on Dean's instruction, all with knowledge by the City.

109. Defendant's conduct proximately caused Reaves to suffer extreme emotional distress, embarrassment, humiliation, financial loss, loss of employment opportunity, and other pecuniary and non-pecuniary losses.

**110.** Reaves seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive damages,

damages for loss of career opportunity, emotional distress damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT III
## 42 U.S.C. § 1981 and TITLE VII
## HARASSMENT – HOSTILE WORK ENVIRONMENT

111.   Plaintiff adopts and realleges paragraphs 14-72 as if fully recited herein.

112.   Defendant, though its agents and employees, harassed Plaintiff because she is a White female.

113.   The City subjected Reaves to derogatory comments about her race and gender, and condoned and initiated that others make her life a "living hell" because she is a White female police officer.

114.   Zedrick Dean targeted Reaves for harassment and caused Reaves to work in a hostile environment, portraying her intentionally as a racist White female knowing that such labels would subject her to personal and professional harm.

115.   Reaves was caused to be threatened and targeted. Dean encouraged Black police officers to file complaints against Reaves to target her further for termination or to force her to quit. Reaves became fearful for her physical well-being.

116.   Deputy Chief Reaves filed a complaint with City Investigations on April 22, 2021, regarding her complaints of race and gender discrimination and hostile work environment, but the City ignored her.

117. On or about April 6 2021, the City, its agents, employees, and the Mayor caused false complaints to be made against Reaves before the Montgomery City Council and subsequently the State of Alabama.

118. Reaves took advantage of the preventative or corrective opportunities the City provided to avoid or correct the harm and the City failed to take reasonable and prompt corrective action.

119. Reaves suffered damages because of the hostile work environment.

120. As a proximate result of Defendant's unlawful harassment, Reaves suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

121. Plaintiff seeks declaratory and injunctive relief, an award of lost back pay and front pay, nominal, compensatory and punitive damages, costs, pre-judgment and post-judgment interest, attorneys' fees, and any and all such other relief the trier of fact may assess. Plaintiff seeks reinstatement.

WHEREFORE, Plaintiff respectfully requests this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging further in discriminatory treatment on the basis of gender and race, and retaliation based on protected activity;

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal provisions and employment opportunities for all employees, and which eradicate the efforts of past and present unlawful employment practices, including implementing a policy against gender and race discrimination and against retaliation for engaging in protected activities;

C.     Order retraining of the City and the Police Department on EEO policies;

D.     Order Defendant to make Plaintiff whole by providing back pay, front pay, reinstatement, the position that she was denied, the pay, benefits and bonuses of the position she was denied, interest, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory, punitive, and liquidated damages;

E.     Award Plaintiff reinstatement to her former position with back pay, raises and bonuses, compensatory, punitive and liquidated damages;

F.     Award Plaintiff monetary damages for the denial of the promotion;

G.     Award Plaintiff costs and expenses herein, including reasonable attorneys' fees; and

H.     Award such other and further relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

Alicia K. Haynes (ASB-8327-E23A)
An Attorney for Plaintiff

OF COUNSEL:
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Facsimile: (205) 879-3572
Email: akhaynes@haynes-haynes.com

Heather Newsom Leonard (ASB-1152-061H)
**HEATHER LEONARD, P.C.**
P.O. Box 43768
Birmingham, AL 35243
Phone: (205) 977-5421
Facsimile: (205) 278-1400
Email: heather@heatherleonardpc.com

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL**

City of Montgomery
103 North Perry Street
Montgomery, AL 36104

**PLAINTIFF'S ADDRESS**

Jennifer M. Reaves
c/o Alicia K. Haynes
HAYNES & HAYNES, P.C.
1600 Woodmere Drive
Birmingham, AL 35226