IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER M. REAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:22-cv-458-ECM |
| | ) | [WO] |
| CITY OF MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

In October 2022, Plaintiff Jennifer Reaves' service in the Montgomery Police Department concluded.  The following year in June she filed this action, asserting twenty-two claims against the City of Montgomery, two of her coworkers, Zedrick Dean and Ramona Harris, and the Montgomery mayor, Steven L. Reed.  Reaves alleges that she endured discrimination, harassment, and bullying due to her race and sex, ultimately leading to her forced retirement.

Now pending before the Court is Defendant Steven L. Reed's motion to dismiss the complaint for the failure to state a claim upon which relief can be granted.  The motion is fully briefed and ripe for review.  For the foregoing reasons, the motion is due to be granted in part and denied in part.

**II. JURISDICTION AND VENUE**

The Court has subject matter jurisdiction over the federal law claims in this proceeding pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law

claims pursuant to 28 U.S.C. § 1367.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### III.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*, at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## IV.  FACTS[1]

Jennifer Reaves ("Reaves") is a Caucasian woman.  She spent twenty-six years[2] working for the City of Montgomery Police Department ("MPD") until she was forced to retire in October 2022 due to ongoing "discrimination, harassment, retaliation, and bullying." (Doc. 43 at 14, ¶ 81).  Three years prior to her termination, in July 2020, she was promoted to the role of Deputy Chief of Operations, a position historically held only by male police officers.  From this position, she supervised approximately two hundred police officers and reported directly to the Chief of Police, Chief Ernest N. Finley, Jr. ("Finley").  At the time, Reaves had the most seniority of the MPD's senior command staff.

### A.  2020: The Investigation

In October 2020, Reaves began investigating approximately twelve officers for policy and ethics violations.  Five of the officers reported directly to Reaves.  The remaining officers reported to Deputy Chief of Staff Zedrick Dean ("Dean"), an African American male.  Reaves sent her investigation results to Chief Finley and the City of Montgomery's ("the City") investigator.  The officers reporting to Dean "were either not guilty of ethics violations or the violations were considered minor." (*Id.* at 5, ¶ 25).  In

---

[1] This recitation of the facts is based on Reaves' amended complaint (doc. 43).  The Court recites only the facts pertinent to resolving Mayor Steven L. Reed's motion to dismiss.  For purposes of ruling on the motion, the facts alleged in the amended complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Reaves.

[2] Reaves' complaint lists her length of employment as both twenty-six and twenty-seven years.  Paragraph seventeen states that she "has served with the City of Montgomery Police Department for 26 years." (Doc. 43 at 4).  Meanwhile, paragraph eighty-six states that she retired "after 27 years of dedicated service." (*Id.* at 16).  However, the precise length of employment is not material to the issues before the Court.

contrast, the five officers reporting directly to Reaves "should have been terminated." (*Id.* at ¶ 26).

### B. 2021: Investigation Aftermath

Following the completion of the investigation, agents of the City, including employees and managers within the MPD, began discriminating against, harassing, and bullying Reaves due to her race and sex.[3]   This discriminatory treatment continued, leading Reaves to file a complaint with City Investigations in April 2021.   Reaves' complaints to the City were ignored.

Reaves attempted to pursue proper disciplinary policies and procedures against police officers when appropriate.   However, the City, including Mayor Steven L. Reed ("Mayor Reed"), opposed her attempts.   On April 6, 2021, the Council heard "false and fraudulent complaints" against Reaves and Finley from the City's employees, due in part to Mayor Reed's actions. (*Id.* at 8, ¶ 42).   Afterward, Mayor Reed, acting in concert with other City employees, "forwarded false and fraudulent complaints against Reaves and Finley to the Alabama Ethics Commission." (*Id.* at ¶ 43).   The City and Mayor Reed used the filing of these complaints to force Finley to resign because they did not support

---

[3] The alleged discrimination, harassment, and bullying manifested in a variety of ways from the named Defendants, as well as other officers.  Reaves provides a number of examples and incidents that occurred as supporting facts.  However, many of the specific examples and incidents alleged by Reaves are not pertinent to ruling on Mayor Reed's motion.

Finley's practice of hiring, promoting, and disciplining officers regardless of race and gender.[4]

After Finley resigned as Chief, the City offered the position of Interim Chief to Dean. This interim promotion came with a pay increase. Dean, who ranked equally with Reaves but had six fewer years of departmental experience, ultimately declined the position. The City then chose to email the entire MPD about the vacancy, inviting officers at the rank of Captain and above to apply to the position, despite the fact that captains are "not qualified to fill in" the role of Interim Chief "due to their lower rank." (*Id.* at 9, ¶ 49). Ramona Harris ("Harris"), an African American female with the rank of Major, was eventually awarded the interim promotion. Reaves was never offered the position. The City cited the "baseless, fraudulent complaints to the State" to her as the reason why. (*Id.* at 9, ¶ 50).

Later that year, on August 4, 2021, the State found Reaves to have committed an unspecified, minor violation of the Alabama Ethics Act, allegedly "based on false and fabricated evidence created by the City." (*Id.* at 10, ¶ 53). Immediately after, Mayor Reed issued a press release to "intentionally disparage and defame Reaves." (*Id.* at 10, ¶ 54).[5]

---

[4] Reaves alleges that "Mayor Reed told Finley he was being removed and it could be very easy or difficult, meaning [Finley] was either resigning or Reed was terminating him." (Doc. 43 at 9, ¶ 45). Mayor Reed then prepared Finley's resignation documents.

[5] This press release included the following: "The Alabama Ethics Commission found Montgomery Police Department Chief of Operations Jennifer Reaves and former Police Chief Ernest Finely each committed a minor violation of the Alabama Ethics Act." (Doc. 43 at 54, ¶ 335).

Eight days later, on August 12, 2021, Harris called Reaves into her office to discuss a reported incident in which Dean made discriminatory comments and used harassing behavior against Reaves.  Harris "had a video camera pointed at the chair Reaves was directed to sit in." (*Id.* at 11, ¶ 58).  Dean was not present.  Instead, Harris "read from a prepared, typed script" while telling Reaves that, due to restructuring of the MPD, Reaves was being reassigned to a Major position at the jail. (*Id.* at 11, ¶ 60). Harris assured Reaves that the reassignment "had nothing to do with her job performance and that Reaves was not being punished." (*Id.*).  This demotion, which was effective immediately, had Reaves reporting directly to Dean, whom she "had complained was directly engaged in acts to harass and discriminate and retaliate against her." (*Id.* at 11, ¶ 61).  Following the receipt of her first paycheck after her demotion, Reaves also learned that the City "stripped [her] of her stipend" without telling her, substantially reducing her pay. (*Id.* at 12, ¶ 64).

On August 19, 2021, Reaves timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  Thereafter, the City retaliated against Reaves for her protected activity. (*Id.* at 12, ¶ 66).  Less than two weeks later, Reaves "was issued a 'Category B' reprimand for an incident which allegedly occurred" one year prior. (*Id.* at 12, ¶ 67).  The incident involved three officers on the SWAT team, two of whom are Caucasian and one of whom is African American.  SWAT was under Dean's supervision.  However, the complaint, filed by the African American officer, did not include a reference to Dean, nor was Dean reprimanded or disciplined "despite his presence and involvement in the incident." (*Id.* at 12, ¶ 68).

On or about September 2, 2021,[6] in an attempt to retaliate and to "intentionally disparage Reaves personally and professionally," the City issued another press release asserting she had violated the Alabama Ethics Act, this time including Reaves' photograph.[7]   (*Id.* at 12–13, ¶ 69–70).   Subsequently, in November 2021, the State cleared Reaves of any violations of the Alabama Ethics Act.   The City did not issue a press release following Reaves' exoneration, nor did Mayor Reed or the City "attempt to rectify the professional and reputational harm caused to Reaves." (*Id.* at 13, ¶ 75).   Her former position was not restored to her.

### C.  2022: Involuntary Retirement and Lawsuit

According to Reaves, the discrimination and retaliation by the City and the MPD's officers against her continued into the next year.[8]   Reaves submitted a request for involuntary retirement on August 30, 2022, citing the discrimination, harassment, and bullying against her.   She later collected her personal items, returned her equipment, and concluded her service.   The City, Mayor Reed, and the MPD "intentionally refused to acknowledge Reaves or her years of service," despite celebrating, photographing, and posting on social media about other officers' retirements. (*Id.* at 16, ¶ 88).

---

[6] Reaves' complaint references both September 1, 2021, and September 2, 2021, as the date upon which the second press release was made. (Doc. 43 at 12; 54; 56).  This inconsistency appears to be immaterial.

[7] This press release included the following: "Also, shortly after she assumed the role, the Alabama Ethics Commission found that Finley and Montgomery Police Department Chief of Operations Jennifer Reaves each committed a minor violation of the Alabama Ethics Act." (Doc. 43 at 55, ¶ 336).

[8] Reaves details further allegations of discrimination and harassment at the hands of the City and other officers but these allegations do not contain direct references to Mayor Reed.

On April 25, 2022, the EEOC issued Reaves a Notice of Right to Sue. (Doc. 1-4). Reaves also filed a Notice of Claim for Damages with the City on January 28, 2022. (Doc. 1-5).  She then brought this action on August 1, 2022, in this Court (doc. 1) before amending her complaint on June 8, 2023. (Doc. 43).  After service of process, the City, Dean, and Harris filed answers. (*See* docs. 59; 66; 83).  Mayor Reed moved to dismiss the complaint for its failure to state a claim. (Doc. 64).

## V.  DISCUSSION

Reaves' complaint contains twenty-two counts, many of which are against the City, Dean, or Harris, and are not addressed in this opinion.  Ten of her counts, comprising of three federal law claims and seven state law claims, are brought against Mayor Reed.  Counts I and II allege violations of the Equal Protection Clause of the Fourteenth Amendment.  Count XIII asserts a conspiracy claim in violation of 42 U.S.C. § 1985.  Reaves' remaining state law claims are as follows: Count XIV – civil conspiracy; Count XV – invasion of privacy; Counts XVI and XVII – defamation (intentional and negligent slander and libel per se); Counts XX and XXI – breach of fiduciary duty and loyalty and aiding and abetting such a breach; and Count XXII – tortious interference with contractual or business relations.

The Court begins its analysis by identifying in which capacity (or capacities) Mayor Reed is sued.  The Court then turns to the federal claims before addressing the state law claims.  Finally, the Court discusses Mayor Reed's defense of qualified immunity.

## A.  Determining the Capacity in Which Reed is Sued

The Court starts by determining whether Mayor Reed is sued in his official capacity, individual capacity, or both.  Reaves does not, in the operative complaint, expressly state in which capacity she asserts each of her claims. (Doc. 43).[9]  Mayor Reed takes the position that all ten claims are brought against him in his individual capacity. (Doc. 64 at 1) ("[t]en (10) causes of action allege actions applicable to Mayor Reed in his individual capacity.").  However, in his reply brief, the mayor addresses both official and individual capacity claims. (*See* doc. 81 at 7).  Reaves does not address this issue in her briefing.

Generally, "plaintiffs have a duty to make plain who they are suing and to do so well before trial." *Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir. 1995).  The most obvious way to comply with this duty is through clear and explicit language in the pleadings.  "However, plaintiffs are not required to designate with specific words in the pleadings that they are bringing a claim against defendants in their individual or official capacities, or both." *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1047 (11th Cir. 2008).  Instead, so long as "the defendants in question receive sufficient notice with respect to the capacity in which they are being sued," the duty of the plaintiff is satisfied. *Id.*

"When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed." *Id.*

---

[9] Only in Count XIV does Reaves specify that Mayor Reed is sued in his individual capacity. (Doc. 43 at 49, ¶ 302).

(*Jackson v. Georgia Dep't of Trans.*, 16 F.3d 1573, 1575 (11th Cir. 1994)).   Courts looking to the course of proceedings can consider factors such as "the nature of plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity which serve as an indicator that the defendant had actual knowledge of the potential for individual liability." *Id.*

Here, the course of proceedings indicates that Reaves seeks to hold Mayor Reed liable only in his individual capacity.   First, Reaves names both Mayor Reed and the City as defendants in the suit.   Therefore, any claims against Mayor Reed in his official capacity would be redundant of those already asserted (or that which could have been asserted) against the City and due to be dismissed. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *see also Tippins v. City of Dadeville*, 2014 WL 1092920, at *5 (M.D. Ala. 2014) (dismissing state law claims against defendants in their official capacities as redundant of claims against city).[10]   Second, Reaves requests punitive damages from Mayor Reed. (*See generally* doc. 43).   "In a § 1983 action, punitive damages are only available from government officials when they are sued in their individual capacities." *Young Apartments*, 529 F.3d at 1047.   Naturally, one would reasonably assume then that Reaves is bringing claims against Mayor Reed in his individual capacity.   Finally, Mayor Reed asserts the defense of qualified immunity, which "is available only in an individual capacity lawsuit, not in an official capacity

---

[10] The Court here, and elsewhere in the opinion, cites to non-binding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

action." *Fitzgerald v. McDaniel*, 833 F.2d 1516, 1520 (11th Cir. 1987).  Accordingly, the Court concludes that Reaves names Mayor Reed only in his individual capacity.

### B.  Federal Law Claims

Reaves asserts three federal law claims against Mayor Reed: two claims for violations of the Equal Protection Clause (Counts I and II), and one claim for a violation of § 1985 (Count XII).

#### 1.  Counts I and II: Race and Sex Discrimination

In Counts I and II, Reaves alleges that Mayor Reed, along with other named defendants, discriminated against her because of her race and sex, thereby creating a hostile work environment for her in violation of the Fourteenth Amendment's Equal Protection Clause.  Mayor Reed argues that Counts I and II should be dismissed because "they assert claims under 42 U.S.C. § 1981 when 42 U.S.C. § 1983 provides the exclusive federal damages remedy for the violation of the rights guaranteed by 42 U.S.C. § 1981." (Doc. 64 at 4).[11]

However, the complaint is sufficiently clear that in Counts I and II, Reaves seeks relief under the Equal Protection Clause of the Fourteenth Amendment for discrimination on the basis of race and sex.[12] (*See* docs. 43 at 16–23; 71 at 6–7).  Elsewhere in the complaint, Reaves cites to 42 U.S.C. § 1983 as providing the means for her Fourteenth Amendment Due Process claim against the City.  That she did not carry the reference to

---

[11] Mayor Reed also noted that, "[t]o the extent [Reaves] seeks to pull [him] into activities surrounding her Title VII claims," Reaves did not mention him in her EEOC Charge of Discrimination. (Doc. 64 at 5). However, Reaves does not bring a Title VII claim against Mayor Reed.

[12] The title of each count, alone, provides some clarity.  Counts I and II are titled, in part, "Fourteenth Amendment – Equal Protection Clause Race and Sex Discrimination." (Doc. 43 at 16; 20).

42 U.S.C. § 1983 in the complaint in Counts I and II is not fatal to her claims.  The court further finds that the factual allegations in the complaint are sufficient to state a plausible claim against Mayor Reed for Counts I and II.  Accordingly, Mayor Reed's motion to dismiss Counts I and II is due to be denied.

### 2.  Count XIII: Conspiracy (42 U.S.C. § 1985)

In Count XIII, Reaves claims that the "City of Montgomery and Mayor Reed conspired to violate her civil rights in violation of 42 U.S.C. § 1985." (Doc. 43 at 48). She alleges that the conspirators "intentionally and willfully" deprived her "of her constitutionally-protected speech under the First Amendment" by "stripping her of [her] position as Deputy Chief of Operations." (*Id.*).

Mayor Reed puts forth two arguments in support of dismissal.  First, he argues that Reaves has not plead sufficient facts to state a claim for conspiracy.  Specifically, Mayor Reed contends that Reaves references instances where she engaged in constitutionally protected speech but then "makes no effort to identify any details or persons who took actions against her and offers no timeframe as to when the conspiracy occurred." (Doc. 64 at 6).  Second, Mayor Reed argues that Reaves' claim is barred by the intracorporate conspiracy doctrine, which holds that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).[13]   The Court need not address Mayor Reed's first argument because the

---

[13] The Eleventh Circuit has held that the intracorporate conspiracy doctrine applies to public, governmental entities. *See Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 768 (11th Cir. 2000).

intracorporate conspiracy doctrine bars Count XIII as currently pled and, under current Eleventh Circuit precedent, Reaves' stated exceptions do not apply.

The intracorporate conspiracy doctrine "bars conspiracy claims against corporate or government actors accused of conspiring together within an organization[.]" *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012). Just as though an individual cannot conspire alone, "it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). Reaves brings Count XIII against two defendants: the City and Mayor Reed. (Doc. 43 at 48). She does not allege that any non-City employees were involved. *See Denney v. City of Albany*, 247 F.3d 1172, 1191 (11th Cir. 2001) (dismissing conspiracy claim against two city employees). And although Reaves argues that Mayor Reed was acting outside of the scope of his employment, (doc. 12), she does not cite to any factual allegations in the complaint supporting this argument.[14] In Reaves' complaint, she alleges that the City and its mayor conspired to deprive her of her First Amendment right to free speech by, among other things, "stripping her of [her] position as Deputy Chief of Operations." (Doc. 43 at 48, ¶ 293). In simpler terms, Reaves is alleging that Mayor Reed conspired with the City while "effectively acting as the City itself[.]" *Denney*, 247 F.3d at 1191. Allegations such as this fit squarely within the intracorporate conspiracy doctrine's prohibition. The alleged conspiracy "occurred only within a government entity, and thus the intracorporate

---

[14] The Court recognizes that "one might reasonably believe that violating someone's constitutional rights is never a job-related function or within the scope of" Mayor Reed's duties. *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010). "However, the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally." *Id.*

conspiracy doctrine bars" her claim. *See Rehberg*, 611 F.3d at 854 (dismissing claim against district attorney's chief investigator when plaintiff failed to allege a conspiracy with anyone outside of the district attorney's office); *see also Edwards v. Dothan City Sch.*, 82 F.4th 1306, 1313 n.1 (11th Cir. 2023) (noting that claim against school board and its members would still be barred by the doctrine even if factual deficiencies were alleviated).

Having found that the intracorporate conspiracy doctrine bars Reaves' claim, the Court turns to whether an exception applies. In her response brief, Reaves cites to *Grider v. City of Auburn* and argues that two exceptions (recognized by other circuits) apply to the intracorporate conspiracy doctrine's general rule. 618 F.3d 1240, 1262 (11th Cir. 2010) (discussing three exceptions to the intracorporate conspiracy doctrine adopted by other circuits). Specifically, she contends (1) that Mayor Reed had an independent, personal stake in the alleged activities and (2) that her claim alleges "a multiplicity of acts committed over an extended period of time." (Doc. 71 at 15).

The Eleventh Circuit "clearly recognized an exception to the doctrine for criminal conspiracies where the conduct violates the federal criminal code." *Grider*, 618 F.3d at 1263 (citing *McAndrew*, 206 F.3d at 1034). The Circuit has discussed other potential exceptions; however, it has never adopted them. For example, in *Dickerson*, the Eleventh Circuit discussed exceptions to the intracorporate doctrine recognized by other circuits. 200 F.3d at 769. And yet, the Court of Appeals did not reach the issue of whether to adopt them in this circuit. *Id.* at 770. Ten years later, *Grider* also declined to reach the issue. *Grider*, 618 F.3d at 1263 ("Because none of the exceptions discussed in *Dickerson*

would apply on the facts of this case, we, like the Court in *Dickerson*, do not reach the issue of whether to adopt them.").[15]   To date, the Circuit still has "not addressed exceptions to the intracorporate conspiracy doctrine." *Edwards*, 82 F.4th at 1312.  This Court likewise declines to apply the exceptions on which Reaves relies—the Court finds that the intracorporate conspiracy doctrine prohibits Reaves' claims as currently pled. Accordingly, Count XIII is due to be dismissed.[16]

### D.  State Law Claims

#### *1.  Count XIV: Civil Conspiracy*

In Count XIV, Reaves asserts an Alabama state law claim for civil conspiracy, alleging that Mayor Reed, Dean, and Harris conspired to retaliate against her for exercising her First Amendment rights, deprived her of her position as Deputy Chief of Operations, and damaged her reputation. (Doc. 43 at 49–50).  In support of his motion, Mayor Reed employs the same arguments he used regarding Reaves' § 1985 conspiracy claim: insufficient factual allegations to support a claim for civil conspiracy and prohibition of the claim by the intracorporate conspiracy doctrine. (Doc. 64 at 7–8).

---

[15] Reaves cites *Grider* for the proposition that "[t]he Eleventh Circuit recognizes at least three common exceptions to the intra-corporate [sic] conspiracy doctrine." (Doc. 71 at 9–10).   This is a misrepresentation of precedent.  *Grider's* very next line describes the Circuit's avoidance of the issue in *Dickerson. Grider*, 618 F.3d at 1263.  Two paragraphs later, the Court in *Grider* explicitly declines to reach the issue of whether to adopt the exceptions. *Id.*

[16] Although the Court does not address Mayor Reed's first argument (whether Reaves pleads sufficient facts to state a claim for conspiracy), the Court is doubtful that Reaves has overcome the necessary threshold to survive Mayor Reed's motion to dismiss for failure to state a claim. *See Edwards*, 82 F.4th at 1312 (dismissing § 1985 conspiracy claim when plaintiff failed to allege factual scenarios supporting legal conclusions that conspirators "acted in concert when terminating [plaintiff's] contract"); (*see also* Doc. 43 at 48–49) (lacking factual scenarios to support allegations that Mayor Reed and the City "intentionally and willfully conspired against [Reaves] to deprive her of her constitutionally-protected speech under the First Amendment[.]").

Reaves argues that she has adequately pled her conspiracy claim. (Doc. 71 at 17–18). She does not address the application of the intracorporate conspiracy doctrine.  Similar to the analysis of Reaves' § 1985 claim, the Court need not address Mayor Reed's first argument because the intracorporate conspiracy doctrine bars Reaves' state law conspiracy claim.

Under Alabama law, a civil conspiracy exists when there is "(1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." *Ex parte Maint. Grp., Inc.*, 261 So. 3d 337, 347 (Ala. 2017).  Like a federal § 1985 claim, Alabama state law claims for civil conspiracy are barred by the intracorporate conspiracy doctrine. *M & F Bank v. First Am. Title Ins. Co.*, 144 So. 3d 222, 234 (Ala. 2013) (citing *Grider*, 618 F.3d at 1261 and *McAndrew*, 206 F.3d at 1036 when discussing the doctrine's meaning and applicability to Alabama law).  Here, Reaves' state law conspiracy claim contains the same flaws as her federal § 1985 claim: she fails to allege that a non-City employee engaged in the conspiracy. *See Denney*, 247 F.3d at 1191.  By alleging that the City, its mayor, and its police officers conspired together, Reaves has alleged a conspiracy occurring within a government entity.  The arguments in Reaves' response brief highlight this defect. (Doc. 71 at 17) ("Plaintiff further alleges that Defendant Reed, the City, and its agents and employees conspired to forward false and fraudulent complaints against her to the Alabama Ethics Commission.").[17]  Conspiracy allegations solely against government entities and their

---

[17]  As an aside, Reaves argues that she "also alleges that Commission investigator Byron Butler" and "the Commission's general counsel Cynthia Raulston" engaged in the conspiracy. (Doc. 71 at 17).  No such

agents are, by definition, barred by the intracorporate conspiracy doctrine. *McAndrew*, 206 F.3d at 1036.  Consequently, just as the doctrine barred Reaves' § 1985 claim, it also warrants dismissal of her state law conspiracy claim.

### 2. Counts XVI and XVII: Defamation

Reaves asserts two defamation claims against Mayor Reed: Count XVI (intentional slander and libel per se) and Count XVII (negligent libel and slander).  In both claims, she alleges that Mayor Reed "said or caused to be published" two false statements, the first on August 4, 2021,[18] and the second on September 2, 2021.[19]  Mayor Reed cites two reasons for dismissal.  First, he argues that "the statements attributed to [Reed] were, in fact, true at the time of publication[.]" (Doc. 64 at 9).  Second, he contends that "the complaint does not allege sufficient facts to reasonably infer that Reed was acting with knowledge that the statements were false or with reckless disregard to the falsity of the statements." (*Id.*).  According to Mayor Reed, Reaves is a public figure, meaning actual malice (rather than mere negligence) is required to establish a defamation claim. (*Id.*).  Reaves argues that "she never alleged she was a public figure[.]" (Doc. 71 at 20).  She further argues that she has sufficiently alleged her claims of defamation.

---

allegations appear in her operative complaint.  In fact, neither Butler nor Raulston are mentioned in the complaint at all.

[18] This press release included the following: "The Alabama Ethics Commission found Montgomery Police Department Chief of Operations Jennifer Reaves and former Police Chief Ernest Finely each committed a minor violation of the Alabama Ethics Act." (Doc. 43 at 54).

[19] This press release included the following: "Also, shortly after she assumed the role, the Alabama Ethics Commission found that Finley and Montgomery Police Department Chief of Operations Jennifer Reaves each committed a minor violation of the Alabama Ethics Act." (Doc. 43 at 55).

"To establish a prima facie case of defamation, [Reaves] must show that [Mayor Reed] published a false and defamatory statement concerning [Reaves] to a third person." *See Atkins Ford Sales, Inc. v. Royster*, 560 So. 2d 197, 200 (Ala. 1990). "Truth is an absolute defense to defamation." *Foley v. State Farm Fire & Cas. Ins. Co.*, 491 So. 2d 934, 937 (Ala. 1986). "In defamation actions, a plaintiff is either a private person, a public official, or a public figure, either in general or for the limited purpose of a particular public controversy." *Cottrell v. Nat'l Collegiate Athletic Ass'n*, 975 So. 2d 306, 333 (Ala. 2007). This classification is determined as a matter of law. *Id.* at 332.

 Mayor Reed's arguments are not persuasive. There are insufficient allegations in the complaint for the Court to determine Reaves' classification as a private or public figure. Further, the court finds that Reaves has alleged sufficient facts to state a plausible claim for defamation. Accordingly, Mayor Reed's motion to dismiss is due to be denied as to Counts XVI and XVII.

### 3. *Remaining State Law Claims*

Reaves brings four more state law claims against Mayor Reed: Count XV (invasion of privacy); Count XX (breach of fiduciary duty and loyalty); Count XXI (aiding and abetting the breach of fiduciary duty and loyalty); and Count XXII (tortious interference with contractual or business relations). Mayor Reed lumps these claims together in the penultimate section of his motion to dismiss. (Doc. 64 at 10). In doing so, he failed to provide meaningful analysis or argument in support of his motion. Instead, he states that Reaves has not pled sufficient factual allegations to state claims under each count. He also argues that Counts XX and XXI are "merely a restatement of [Reaves']

conspiracy claims found in Count XIII and Count XIV." (Doc. 64 at 10). He does not directly address the other two counts beyond contending that Reaves provides only "naked assertions" unsupported by fact. In response, Reaves argues that she has sufficiently pled each of her remaining claims. Unlike Mayor Reed, she provides caselaw supporting her argument and undergoes analysis as to why each claim should survive. Mayor Reed does not reply to the substance of her argument. Instead, he asks the Court to decline jurisdiction over Reaves' pending state law claims. (Doc. 81 at 6–7).

Mayor Reed's failure to address, with specificity, the elements of the remaining state law causes of action and the alleged factual allegations (or lack thereof) compels the Court to deny the motion as to these claims. In the absence of any analysis, meaningful or otherwise, the Court will not undertake the onerous task of researching and analyzing claims when the Defendant does not.

### C. Qualified Immunity

Mayor Reed invokes the defense of qualified immunity. (Doc. 64 at 11–12).[20] Qualified immunity offers protection to government officials when they are "performing discretionary functions" and when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant who asserts entitlement to qualified immunity "must first establish that he was acting within the scope of his discretionary authority." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1319 (11th Cir. 2016). Once the defendant has done so, "the burden shifts to the plaintiff to establish that

---

[20] Mayor Reed does not invoke any state immunities under Alabama law.

qualified immunity is inappropriate." *Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (quoting *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016)).   The plaintiff must show: (1) that the officer violated a constitutional right; and (2) that this right was clearly established at the time of the violation. *Id.*

As an initial matter, Mayor Reed asserts qualified immunity, arguing that he is entitled to protection from "[a]ll counts in the [a]mended [c]omplaint." (Doc. 64 at 11). However, qualified immunity does not apply to state law claims. *See Heggs v. Grant*, 73 F.3d 317, 319 n.5 (11th Cir. 1996); *see also McBride v. Houston Cnty. Health Care Auth.*, 2013 WL 674671, at *2 (M.D. Ala. Feb. 25, 2013).   Therefore, Mayor Reed's invocation of qualified immunity applies only to the federal claims against him, but not to any state law claims.

Regarding the merits of his defense, Mayor Reed argues that Reaves has failed to plead that he was "acting outside the scope of his administrative discretion" when committing the alleged acts. (Doc. 64 at 11).   He reaffirms this point in his reply brief. (Doc. 81 at 9).[21]   Reaves argues that Mayor Reed has not established that he was acting within the scope of his discretionary authority. *See Carter*, 821 F.3d at 1319.   According to Reaves, Mayor Reed "has made no effort to carry his burden as he relies on his counsel's generalized and improperly injected factual assertions falling outside the Amended Complaint." (Doc. 71 at 27).

---

[21] In his reply, Mayor Reed discusses immunity from both official capacity claims and individual capacity claims.   Because the Court found that Reaves sues Mayor Reed only in his individual capacity, it does not address his official capacity argument.

The Court finds that the allegations contained in the complaint establish that Mayor Reed was acting within the scope of his discretionary authority as mayor of the City. The discretionary authority "inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Nor is the inquiry whether the alleged act was "committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Instead, the Court "look[s] to the general nature of the defendant's action" and considers whether the defendant's action "*in general* [was] a part of his job-related powers and responsibilities." *Id.* In her complaint, Reaves alleges that Mayor Reed encouraged the filing of complaints, dictated her opportunity to speak at City meetings, referred complaints and evidence to the Alabama Ethics Commission, limited her administrative leave, and released statements to the press. The fact that Mayor Reed may have undertaken these obligations "in an unconstitutional manner does not change the fact that [he] was fulfilling a legitimate job-related function." *Harland*, 370 F.3d at 1267. In other words, "putting aside [Reaves' Equal Protection claims], [Mayor Reed's] actions would undoubtedly be considered part of [his] duties and legitimate exercises of [his] authority." *Id.*

And yet, Mayor Reed's defense of qualified immunity still fails because the allegations in the complaint, which the Court accepts as true, would show that Mayor Reed violated Reaves' clearly established right under the Fourteenth Amendment's Equal Protection Clause to be free from race and sex discrimination in the work place. *See*

*Alexander v. Fulton County*, 207 F.3d 1303, 1313, 1321 (11th Cir. 2000) (affirming a jury verdict of intentional employment discrimination by a sheriff who made race-based employment decisions with respect to discipline, promotions, transfers, and reclassifications); *see also Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007) ("[t]he Equal Protection Clause confers a federal constitutional right to be free from sex discrimination."). Therefore, the Court finds that Mayor Reed is not entitled to qualified immunity at this stage in the litigation.

### IV. CONCLUSION

For the reasons stated, it is

ORDERED that Mayor Reed's motion to dismiss (doc. 64) is GRANTED as to Counts XIII and XIV. It is DENIED in all other respects.

DONE this 29th day of March, 2024.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE