IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JENNIFER M. REAVES,                    )
                                       )
         Plaintiff,                    )
                                       )
v.                                     )    CIVIL CASE NO. 2:22-cv-458-ECM
                                       )              [WO]
CITY OF MONTGOMERY, *et al.*,          )
                                       )
         Defendants.                   )

## MEMORANDUM OPINION and ORDER

## I. INTRODUCTION

Jennifer M. Reaves ("Reaves"), a white woman and twenty-six-year veteran of the Montgomery Police Department ("MPD"), brings suit against four Defendants: the City of Montgomery ("the City"), Mayor Steven L. Reed ("Mayor Reed"), Deputy Chief of Staff Zedrick Dean ("Deputy Dean" or "Dean"), and Major Ramona Harris ("Harris" or "Interim Chief Harris")[1] (collectively, "the Defendants"). (*See* doc. 43).[2] Reaves alleges that the Defendants engaged in "unlawful employment practices and other acts of intentional discrimination, harassment[,] and retaliation." (*Id.* at 2–3, paras. 4–10). Reaves seeks relief on twenty-two claims under federal and state law.[3] (*See generally id.*). Now

---

[1] Major Harris also served as the MPD's Interim Chief of Police. (Doc. 110-17 at 5, para. 12).

[2] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

[3] This case was consolidated with two related cases for discovery: (1) *Finley & Reaves v. Albritton*, 2:23-cv-464-KKD and (2) *Finley v. City of Montgomery*, 2:23-cv-146-KKD. (*See* doc. 101 at 2). On June 10, 2025, United States District Judge Kristi K. Dubose terminated the consolidation and ordered that "all future . . . documents . . . be filed in the case to which it relates." (Doc. 159 at 2).

pending before the Court are two motions:  (1) Reaves' motion to exclude undisclosed witnesses and documents (doc. 133) and (2) the Defendants' motion for summary judgment (doc. 107).

First, Reaves asks the Court to exclude purportedly undisclosed witnesses and documents that the Defendants rely on in support of their summary judgment motion. (*See generally* doc. 133).  Second, the Defendants move for summary judgement with respect to all claims asserted in Reaves' first amended complaint ("Operative Complaint"). (Doc. 107 at 1).  The motions are fully briefed and ripe for review.[4]  Based on a thorough review of the record, the briefs, the applicable law, and for the reasons that follow, Reaves' motion to exclude (doc. 133) is due to be DENIED and the Defendants' motion for summary judgment (doc. 107) is due to be GRANTED.[5]

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction in this proceeding pursuant to 28 U.S.C. §§ 1331 and 1343.  Personal jurisdiction and venue are uncontested, and the

---

[4] The Court considered all the parties' submissions when evaluating the Defendants' motion for summary judgment. (Docs. 107, 108, 109, 110, 111, 113, 140, 146, 153, 154).  The Court also reviewed Reaves' untimely motion to exclude (doc. 133), the Defendants' response (doc. 152), and the Defendants' related evidentiary submission (doc. 155).

[5] In the Court's April 16, 2025 Order, the Court characterized Reaves' summary judgment response—which was not timely submitted—as "incomplete." (Doc. 145 at 13).  Specifically, the Court noted that, Reaves' "response barely references any record evidence, and the occasional references are not accompanied by a specific citation, by page and line, to where the evidence can be found." (*Id.* at 14).  Her response contains the following deficiencies:  (1) unusual highlighting; (2) sections devoid of argument or analysis; (3) references to non-parties; (4) internal draft notations; and (5) phantom footnotes. (*Id.* at 15–16).  Although Reaves' brief was untimely, the Court considers Reaves' filed response (doc. 140) as her submission. (Doc. 145 at 17).

Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### III.  STANDARDS OF REVIEW

#### A.    Motion to Exclude

Federal Rule of Civil Procedure 26(a) requires parties to make initial disclosures of certain information to interested parties. FED. R. CIV. P. 26(a).  Certain information may include "the name and, if known, the address and telephone number of each individual likely to have discoverable information" and "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses," unless the individual or document is only to be used for impeachment. FED. R. CIV. P. 26(a)(1)(A)(i)–(ii).  Initial disclosures must be supplemented "in a timely manner if the [disclosing] party learns that in some material respect the disclosure . . . is incomplete or incorrect." FED. R. CIV. P. 26(e)(1).  This duty to supplement only applies "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A).  "If a party fails to" comport with these requirements, "the party is not allowed to use that information or witness to supply evidence on a motion[] . . . , unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

"District courts have broad discretion to determine whether a violation of Rule 26(a)(2) is harmless." *Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1358 (S.D. Ga.

3

2015); *accord Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012).[6]  Courts look to a variety of factors to determine whether a Rule 26(a)(2) violation is harmless, including:  (1) "the importance of the excluded evidence," (2) the non-disclosing party's explanation "for its failure to comply with the required disclosure," (3) "the potential prejudice" to the other party, (4) "the availability of a continuance to cure such prejudice," and (5) "whether the other party received constructive notice of the undisclosed information through other means." *Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 663 F. Supp. 3d 1294, 1305 (M.D. Fla. 2023).

## B.    Motion for Summary Judgment

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)).  "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-*

---

[6] The Court here, and elsewhere in the Opinion cites to nonbinding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

*Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); FED. R. CIV. P. 56(c). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* at 1311. The burden then shifts to the nonmoving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Nonmovants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252. Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Id.* However, "mere conclusions and

unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## IV.  BACKGROUND

On April 16, 2025, the Court entered a Memorandum Opinion and Order in this case recounting the history of Reaves' untimely and incomplete summary judgment response. (*See generally* doc. 145).  To make a long story short, the Court extended Reaves' summary judgment response deadline twice and allowed Reaves to file her brief out of time. (*See* docs. 121, 129; *see also* doc. 145 at 3–10).  Thirty-nine days after the Defendants moved for summary judgment, and fifteen days past the original deadline, Reaves filed her response. (*See* docs. 115, 140).  Despite multiple extensions, Reaves' response is incomplete.  For example, her submission does not contain a statement of facts.  Instead, Reaves' brief looks like this:

I.   INTRODUCTION

II.  PLAINTIFF'S STATEMENT OF FACTS

(Doc. 140 at 3).

Reaves' response contains several other deficiencies which reflect a lack of careful review.  These include—but are not limited to—the following:  First, Reaves appears to reference "Bennett," "Finley," and "Flickinger" as plaintiffs in this action. (*See, e.g.*, *id.* at

10, 12, 27).  Second, Reaves refers to the Defendants as "[t]he King defendants" in error. (*See, e.g.*, *id.* at 25–26, 30–31).  Third, Reaves neglected to remove internal notations in her final submission (*See, e.g.*, *id.* at 25 ("need research on this"); *see, e.g.*, *id.* at 13 ("I thought I saw you write something up about . . . .")).  Fourth, and most importantly, every section of Reaves' response is devoid of argument or analysis. (*See, e.g.*, *id.* at 6, 10, 11).

On April 16, 2025, the Court granted Reaves' motion for leave to file her response out of time, accepting her incomplete response as timely. (Doc. 145 at 22, para. 4).  To date, Reaves has not asked the Court to reconsider that Order, or otherwise moved to file a corrected brief and evidentiary submission.[7]  On May 6, 2025, the Court held a telephonic status conference and discussed the case's progression with the parties. (*See* docs. 150, 157).  Still, Reaves did not seek relief.  Thus, the Court evaluates the merits of the Defendants' motion for summary judgment based on the record before it.

## V.  FACTS[8]

At the outset, the Court notes that this summary judgment is atypical because Reaves provides no factual support in opposition to the Defendants' motion.  Under Federal Rule of Civil Procedure 56(e), "[i]f a party fails . . . to properly address another party's assertion of fact[s] as required by Rule 56(c), the court may . . . consider the fact[s] undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2); *see also Harrison v.*

---

[7] On April 15, 2025, the day before the Court entered its Order accepting Reaves' summary judgment response out of time, Reaves moved for leave to substitute her summary judgment response in a related case. (*See* doc. 135 in *Finley & Reaves v. Albritton*, 2:23-cv-464-KKD).

[8] Because this case comes before the Court on the Defendants' motion for summary judgment, the Court construes the facts in the light most favorable to Reaves, the nonmovant.  The Court draws all justifiable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*Culver*, 746 F.3d 1288, 1302 n.22 (11th Cir. 2014) (determining that "summary judgment was proper" where a defendant adduced evidence in support of his motion while the plaintiff "presented no evidence to the contrary").  It is undisputed that Reaves failed to meaningfully respond to the Defendants' "Statement of Undisputed Facts." (*See* doc. 140 at 3).  Her response contains a heading entitled "PLAINTIFF'S STATEMENT OF FACTS[,]" but this section was left blank. (*See id.*).  In stark contrast, the Defendants provide 117 pages of "Undisputed Facts" for the Court's review. (Doc. 113 at 17–134).  Nevertheless, although the Court "has before it the functional analog of an unopposed motion for summary judgment[,]" the Defendants still "continue[] to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the [C]ourt must satisfy itself that the burden has been satisfactorily discharged." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008).  Further, this Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

After a careful review of the record, the Court finds that the Defendants are entitled to summary judgment.  The Court goes beyond the facts as recounted in the Defendants' briefing only to the extent required in order to present a coherent summary of the facts relevant to Reaves' claims.

## A.    Reaves' MPD Career

Reaves began working for the MPD on August 11, 1995. (Doc. 108-26 at 4, 12:14–16).  From 1995 until 2020, Reaves rose through the MPD's ranks, and eventually was

promoted by Chief of Police Ernest N. Finley, Jr. ("Chief Finley") to Deputy Chief of Operations in 2020[9] under Mayor Reed.[10] (Doc. 108-7 at 108, 421:10–17; *id.* at 27, 98:11–20).  Chief Finley promoted Reaves because "[s]he was the best qualified individual at the time, . . . a crime fighter, . . . and her accountability was impeccable." (*Id.* at 27, 98:21–99:4).  In August 2021, Reaves was demoted and reassigned to Major at the jail.[11] (Doc. 108-26 at 55, 214:21–215:19; doc. 110-8 at 4, para. 2).  Following this demotion, Reaves "took a week off" from work before taking a leave of absence on October 6, 2021. (Doc. 108-26 at 45, 176:6–15).  Reaves never returned to work. (*Id.*).

## B.    Reaves' Deputy Chief of Operations Tenure

After Chief Finley promoted Reaves to Deputy Chief of Operations, several key events occurred, which form the basis of Reaves' lawsuit.  The Court discusses each of these events in turn.

### 1.    Lieutenant Antavione Ferguson's Carotid Submission Hold

On June 30, 2020, Lt. Antavione Ferguson ("Lt. Ferguson"), a black male, deployed a carotid submission hold—or "chokehold," to borrow the Defendants' turn of phrase, (*see* doc. 113 at 54)—during an arrest. (Doc. 43 at 4 in *Ferguson v. City of Montgomery*, 2:22-

---

[9] The parties refer to this role in various ways in their briefing. (*See, e.g.*, doc. 110-8 at 4, para. 2; doc. 108-26 at 19, 69:1–5).  The Court simply refers to the position Reaves occupied from 2020 onward as "Deputy Chief of Operations," which appears to be the title most consistent with the record.

[10] In November 2019, Mayor Reed was sworn in as Mayor of Montgomery. (Doc. 108-29 at 4, 9:13–18).

[11] Reaves had previously worked as a Major at the jail before her role as Chief of Operations. (Doc. 108-26 at 7, 21:4–14).

cv-607-ECM [hereinafter *Ferguson*]).[12]   Because the suspect had damaged an MPD vehicle, Reaves was required to review the officers' body camera footage to assess the damage done to the vehicle. (Doc. 37-1 at 46, 45:2–6 in *Ferguson*).  While doing so, Reaves observed Lt. Ferguson's use of a chokehold. (*See* doc. 37-3 at 18; doc. 37-5 at 94, 93:8–22 in *Ferguson*).  She determined that Lt. Ferguson had violated MPD's Use of Force Written Policy 3.4.1 ("MPD Directive 3.4.1") "by utilizing a choke hold to gain compliance during the arrest of a subject." (Doc. 37-3 at 14 in *Ferguson*).  Reaves also determined that Lt. Ferguson failed to properly document his use of force. (*Id.* at 18 in *Ferguson*).

Reaves reported her findings to Chief Finley and recommended that Lt. Ferguson be suspended. (*Id.*).  Her recommendation was ultimately given to Mayor Reed, who decided instead to terminate Lt. Ferguson, citing the MPD's 2016 Use of Force Memorandum, which, according to Mayor Reed, contained a "zero[-]tolerance policy against choking." (*Id.* at 8; doc. 37-5 at 36, 35:8–9 in *Ferguson*).  Ferguson filed suit against the City and Mayor Reed asserting violations of Title VII of the Civil Rights Act of 1964 and the Fourteenth Amendment's Substantive Due Process Clause. (*See generally* doc. 1 in *Ferguson*).  This Court ultimately granted summary judgment to the City and entered final judgment in its favor. (*See* docs. 43, 44 in *Ferguson*).

### 2.    MPD Investigation:  Off-Duty Employment

In September 2020, the MPD and Reaves received a complaint from a local business (the Woods RV Park) regarding several off-duty MPD officers it retained for security

---

[12] The Court can take judicial notice of its own records. *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

services. (Doc. 108-26 at 10, 33:11–36:9). From this complaint, the MPD learned that its officers were not following proper procedure for performing off-duty work. (*See* doc. 108-3 at 14, 49:2–17).

After receiving the complaint, Reaves asked for five officers to be investigated, including Lt. Ferguson. (Doc. 108-26 at 10, 35:20–22; doc. 108-17 at 2). Eventually, thirteen MPD officers were implicated in the off-duty employment investigation. (Doc. 108-7 at 99, 386:11–13). Twelve of the thirteen were black males. (Doc. 110-11 at 6, para. 13). After the investigation, charges were substantiated against ten MPD officers. (*Id.* at 6–7, para. 13). Among other recommendations, Chief Finley recommended to Mayor Reed that Lt. Ferguson be terminated—though Lt. Ferguson had already been terminated by Mayor Reed due to his use of a chokehold—and that Lt. Webster be suspended and demoted. (Doc. 108-18 at 2; doc. 108-7 at 99, 386:14–18). Chief Finley received input regarding the punishments from Reaves and Deputy Dean. (Doc. 108-7 at 100, 391:12–16). Mayor Reed approved the recommended disciplinary actions. (Doc. 108-26 at 65–66, 256:22–257:4).

### 3.    Reaves' Firearms Qualifications

MPD policy requires officers to periodically demonstrate basic firearms proficiency, which includes a target practice component. MPD Policy 2.311, effective September 11, 2012, required officers to qualify twice annually, which required that they "shoot a qualifying score of no less than [seventy-six]." (Doc. 108-8 at 2). But if officers failed, they were "immediately . . . given a second opportunity to qualify." (*Id.*). Officers who failed to qualify were prevented from working off-duty employment until they passed

a remedial class. (*Id.*). In June 2018, the MPD issued Policy 3.2.4, which rescinded MPD Policy 2.311. (Doc. 108-9 at 2). Under the new policy, officers were still required to shoot a seventy-six, but failure to qualify prevented officers from performing "official duties" until they had completed remedial training. (*Id.* at 2, 5).

In October 2020, Chief Finley learned that a large number of MPD officers failed to qualify—including his son, Ernest Finley III, and Reaves. (Doc. 108-7 at 69, 267:4–10; doc. 108-16 at 2). This apparently prompted Chief Finley to lower the MPD's minimum qualifying score to seventy and to increase the number of shooting attempts to three. (Doc. 108-7 at 97, 378:18–379:5). On October 21, 2020, Chief Finley contacted Captain Milner "to discuss a complaint in reference to Deputy Chief Reaves being allowed to get another round to qualify at the range." (Doc. 108-16 at 3). At Chief Finley's direction, all officers were permitted a third attempt to qualify on October 22, 2020. (*Id.*).

### 4. Webster's Firearms Qualifications Complaints

Marcus Webster, one of the officers investigated for violating the MPD's off-duty work policy, filed a complaint with City Investigations against Reaves and Chief Finley regarding the change in the Firearm Qualifications policy. (Doc. 108-26 at 16, 57:8–59:6; doc. 110-11 at 7, para. 14). Webster testified that the policy was "changed to protect" Chief Finley's son and Reaves from punishment for their failure to meet the Firearm Qualifications requirements. (Doc. 108-30 at 18, 67:6–22). City Investigations—a separate department that investigates complaints lodged against all of the City's agencies, (doc. 113 at 28; doc. 110-11 at 3–4, paras. 4–5)—determined that "all officers were ultimately given

a third opportunity to qualify, and [Chief Finley] is the individual with the power to change policy." (Doc. 110-11 at 7, para. 14).

On November 3, 2020, Webster filed a second complaint against Reaves and Chief Finley with the State of Alabama Ethics Commission ("AEC") regarding an "abuse of power." (Doc. 108-31 at 4). Webster contended that Chief Finley changed the policy to "protect . . . Reaves from discipline." (*Id.* at 3). Reaves, without evidence, testified that Webster's complaint was nothing more than a conspiracy. (Doc. 108-26 at 32, 123:19–124:22).

### 5. Alabama Ethics Commission Proceedings

Stacey Bellinger ("Bellinger"), one of the City's attorneys, was responsible for working with the AEC. (Doc. 108-3 at 7, 22:17–19). Bellinger spoke with AEC Investigator Byron Butler ("Butler") regarding Reaves and Chief Finley, specifically about the amended firearms qualification policy. (*Id.* at 47, 182:17–183:18). Bellinger informed Butler that Reaves and Chief Finley would not financially benefit from the change in policy and opined that "there were no ethics violations." (*Id.* at 47–48, 184:15–185:6). Mayor Reed did not speak to the AEC concerning Reaves. (Doc. 108-29 at 54, 209:16–19). The City provided Reaves paid legal counsel and she was represented regarding the AEC's investigation. (Doc. 108-26 at 47, 184:12–19; *id.* at 80, 316:7–11).

On August 4, 2021, the AEC held a meeting, in which the former Chief Justice of the Alabama Supreme Court, Lyn Stuart, found "cause to hold that . . . Reaves ha[d] committed one minor violation of the Alabama Ethics Act." (Doc. 109-11 at 7). That same day, a local news station, WSFA, published an article regarding the AEC's findings,

specifically noting that "Reaves and [Chief Finley] [had] each committed a minor violation of the Alabama Ethics Act." (Doc. 110-4 at 2). However, on November 18, 2021, Alabama Attorney General Steve Marshall exercised his discretion as Attorney General and found "[a]s a matter of public record, . . . that neither . . . Reaves nor . . . Chief Finley engaged in any criminal conduct whatsoever." (Doc. 110-6 at 2).

### 6.    MPD Complaints

#### a.    Denise Barnes' Complaint

On December 7, 2020, MPD officer Denise Barnes ("Barnes") lodged a complaint against Reaves, alleging that Reaves had "tr[ied] to depict [her] as an angry black woman" at an MPD meeting and of making racially offensive remarks to Barnes. (Doc. 108-2 at 53, 206:2–16, 207:6–208:13; doc. 110-11 at 7, para. 15). City Investigations interviewed Reaves and conducted an investigation, ultimately determining that Barnes' complaint was "unfounded," and closed the matter without discipline. (Doc. 110-11 at 7, para. 15).

#### b.    Anonymous Complaint

On January 19, 2021, Chief Finley learned from a confidential source that Barnes had said to that source that "Reaves is against all black women in the department" and that Barnes and "other b[l]ack female staff members were going to make trouble for . . . Reaves by being defiant and making complaints to . . . City Investigations." (Doc. 108-19 at 2). The anonymous complaint was investigated but, once again, City Investigations determined that the allegations were unfounded. (Doc. 110-11 at 7–8, para. 16).

### c.    Jairus Booker's Complaint

On August 20, 2020, Officer Jairus Booker ("Booker") was involved in an on-duty shooting. (Doc. 110-11 at 9, para. 19).  While still at the scene, Booker was evaluated by a medical unit and determined to have high blood pressure and an elevated heartrate. (*Id.*)  Booker requested to be taken to a hospital and treated, but Major Hall and Reaves "advised that he could not leave the scene." (*Id.*).  Booker later filed a complaint with City Investigations against Reaves and others. (*Id.* at 9, para. 20; *see also* doc. 108-26 at 14–15, 52:19–53:8).  Chief Finley "was working on a new policy that called for officers to remain on scene" but this new policy had not been implemented as of August 20, 2020. (Doc. 110-11 at 10, para. 21).  Instead, it appears that the operative policy—MPD Policy 3.4.3—stated that officers could not be required to give a statement "sooner than twenty-four (24) hours" after a qualifying incident. (Doc. 113 at 82).[13]  In conjunction with its investigation, City Investigations reviewed MPD Policy 3.4.3 and substantiated findings against Reaves for violations of that policy and the MPD's Employee Handbook. (Doc. 110-11 at 10, para. 22).

On August 30, 2021, Interim Chief Harris[14] recommended discipline for Reaves, but noted that Reaves had followed "orders . . . that w[ere] . . . verbally approved by Chief Finley and City Investigations." (Doc. 110-17 at 3, para. 5).  Interim Chief Harris

---

[13] This policy was provided by the Defendants in their briefing but does not otherwise appear in the record.

[14] Harris attained this role following Chief Finley's resignation, as discussed below. *See infra* Section V.B.9.

recommended that Reaves receive a letter of reprimand. (*Id.*).  Reaves did not respond to Interim Chief Harris' punishment. (*Id.*).

### d.   Tomekia Armstead's Complaints

On February 1, 2021, Tomekia Armstead ("Armstead") filed a complaint against Reaves because Reaves purportedly failed to promote her and created a hostile work environment. (Doc. 110-11 at 10–11, para. 23).  An investigation revealed that Reaves had offered Armstead the promotion but that Armstead turned it down when she learned that the promotion required a change to the night shift. (*Id.* at 11, para. 23).  City Investigations determined that the allegations were unfounded.[15] (*Id.*).

On April 18, 2021, Armstead filed a second complaint against Reaves for racial and sexual discrimination. (*Id.* at 11, para. 25).  Then on July 16, 2021, Armstead filed a third complaint against Reaves for harassment. (*Id.* at 13–14, para. 30).  Both complaints were investigated and determined to be unfounded.  (*Id.* at 12, para. 25; *id.* at 14, para. 30).

### 7.   Montgomery City Council Work Session

On April 6, 2021, several former or current MPD Officers—including Lt. Ferguson and Webster—attended a Montgomery City Council "Work Session." (Doc. 113 at 87; doc. 108-30 at 25, 93:18–94:6).  Webster spoke out against Chief Finley and Reaves regarding the off-duty employment investigation. (Doc. 108-30 at 25, 94:7–95:16).  Reaves did not speak during the April 6, 2021 Montgomery City Council Work Session. (Doc. 108-26 at

---

[15] City Investigations also investigated a March 11, 2021 complaint against Reaves levied by Patrice Toles. (Doc. 110-11 at 11, para. 24).  The allegations were unsubstantiated. (*Id.*).

62, 243:22–244:14).   According to Reaves, Mayor Reed told Chief Finley "not to say anything." (*Id.* at 62, 243:1–21).

### 8.    Reaves' Complaint against Armstead and Barnes

On April 22, 2021, Reaves requested that City Investigations investigate Armstead and Barnes for creating a hostile and discriminatory workplace. (Doc. 108-28 at 2).   City Investigator Harold Bellinger ("Mr. Bellinger") reviewed Reaves' complaint and found that Reaves' allegations "did not involve complaints of what [Mr. Bellinger] perceived to be racial and/or sexual discrimination." (Doc. 110-11 at 12, para. 26).   Rather, "the allegations appeared to involve alleged acts of insubordination." (*Id.*).   After an investigation, Reaves' allegations were unsubstantiated. (*Id.* at 13, para. 28).

### 9.    MPD Leadership Shakeup

In June 2021, Chief Finley voluntarily resigned as Chief of Police, noting that Mayor Reed believed that "crime [wa]s going in the wrong direction." (Doc. 108-7 at 32, 118:16–119:3).   Dean was then appointed Acting Chief of Police. (Doc. 108-4 at 27, 102:10–103:2).   Reaves testified that there was nothing inappropriate about appointing Dean as Acting Chief of Police. (Doc. 108-26 at 36, 138:9–11).   While Dean served as Acting Chief, applications for Interim Chief of Police were solicited.   Reaves received a group e-mail regarding the application process to be considered for Interim Chief of Police, but did not submit an application. (*Id.* at 36, 138:15–139:4).   On June 25, 2021, Mayor Reed appointed Harris as Interim Chief. (Doc. 108-23 at 12, 44:11–16; doc. 108-4 at 27, 103:7–11).   In March 2022, Darryl Albert was named the official Chief of Police. (Doc. 113 at 17–18; doc. 108-26 at 49, 190:4–191:6).

17

### 10.    Reaves' Reassignment

On August 10, 2021, Reaves claimed to have had a telephone call with Dean, during which "Dean became heated and told [Reaves] that [she] work[s] for [Dean]." (Doc. 1-3 at 4).  On August 19, 2021, Reaves filed an Equal Employment Opportunity Commission ("EEOC") Complaint alleging race and sex discrimination and retaliation, specifically referencing her phone call with Dean.[16] (*Id.* at 2, 4).  Reaves notes that on August 12, 2021, Harris informed Reaves that she would be reassigned to an open Major position at the jail. (*Id.* at 4).

As Interim Chief, Harris reassigned Reaves from "Chief of Operations to Major over the Jail." (Doc. 110-17 at 4, para. 12).  Before becoming Interim Chief, Harris had worked as a Major "over three different divisions that had been combined into one division – Administrative, Training, and the Jail." (*Id.*).  She testified that it was uncommon for one Major to cover multiple divisions and that this practice began when Chief Finley led the MPD. (*Id.*).  To create more "efficient and effective" divisions, Harris restructured the MPD. (*Id.* at 4–5, para. 12).  As part of her restructuring effort, Harris increased the number of divisions from five to eight and reassigned Reaves to head one of the new divisions, moving her to Major over the Jail Division.  (*Id.* at 5, para. 12).  Reaves and six other Majors were reassigned. (*Id.*).  Harris reassigned Reaves to the Jail Division because "Reaves had been successful in her last assignment there." (*Id.*).

---

[16] On February 1, 2022, Reaves filed an amended EEOC Charge alleging retaliation. (Doc. 110-7 at 2–6). Reaves filed a third EEOC charge on May 6, 2022, which contained additional allegations of retaliation. (Doc. 110-8 at 2–4).

Reaves believes that she was reassigned because of her race and in retaliation for her EEOC complaint against Dean. (Doc. 108-26 at 55, 214:22–215:19). Mayor Reed did not reassign or demote Reaves—Interim Chief Harris did. (Doc. 108-29 at 29, 109:21–110:8). When Reaves was reassigned, her salary remained the same, but she no longer received a stipend from her additional responsibilities as Deputy Chief of Operations. (Doc. 108-26 at 45, 173:1–14). During Chief Finley's tenure, Shannon Youngblood was reassigned as Chief of Operations and also lost his stipend. (*Id.* at 56, 217:17–218:13).

### 11. Reaves' Administrative Leave

On August 12, 2021, after learning of her reassignment as Major over the Jail Division, Reaves took "a week off." (*Id.* at 45, 176:6–10). Two months later, on October 6, 2021, Reaves left work and never returned. (*Id.* at 45, 176:11–15). Reaves was placed on administrative leave with pay from October 7, 2021 to December 3, 2021. (Doc. 108-23 at 58, 227:15–228:13). From December 3, 2021 through February 24, 2022, Reaves was placed on "Employee Approved" Family Medical Leave Act ("FMLA") leave. (*Id.* at 58–59, 228:20–230:5). Reaves periodically spoke with her "counselor" and "peer support" regarding her decision to stay away from work. (Doc. 108-26 at 51–52, 200:15–201:7).

### 12. Reaves' Patrol Car

In January 2022, Interim Chief Harris "was notified by a fleet manager that Reaves' assigned vehicle was overdue for preventative maintenance." (Doc. 110-17 at 6, para. 13). Reaves testified that the car had not been driven since October 2021. (Doc. 108-26 at 48, 188:7–23). Reaves asked Harris for time to clean out her personal belongings and stated

that her patrol car would be ready for maintenance "next week." (Doc 110-17 at 6, para. 13).  Harris shared the information with the fleet manager. (*Id.*).

On April 22, 2022, after Reaves had failed to follow up, the MPD retrieved Reaves' City-owned patrol vehicle in order to perform routine maintenance. (Doc. 110-13 at 2–3, paras. 2–4).  Then-Lt. Raymond Carson ("Carson") planned to tow the vehicle because it had been sitting for so long that he did not believe it would "crank." (*Id.* at 2–3, para. 2).

### 13.    Reaves' Retirement

Reaves did not have a written MPD employment contract. (Doc. 108-26 at 58, 225:4–22).  Reaves states that she "unwillingly retired," but otherwise acknowledges that she was not terminated by the City. (*Id.* at 58, 226:19–23).

## VI.  DISCUSSION

### A.    Reaves' Motion to Exclude

Reaves moves to exclude seven witnesses that "were not previously disclosed by any Defendant":   (1) James Graboys ("Graboys"); (2) Raymond Carson ("Carson"); (3) Dustin Lansford ("Lansford"); (4) Charles Jinright ("Jinright"); (5) John Hall ("Hall"); (6) Marcus Webster ("Webster"); and (7) Stacy Bellinger ("Bellinger"). (*See* doc. 133 at 2).   Reaves also asks the Court to exclude twenty-five exhibits from the Defendants' summary judgment evidentiary submissions, citing improper disclosure. (*See id.* at 6–7). The Court first addresses Reaves' request to exclude the witnesses before evaluating the exhibits.

1.    **Witnesses**

The seven contested witnesses fall into three distinct buckets:  (1) witnesses named in Reaves' initial disclosures; (2) witnesses Reaves knew of; and (3) one witness that was not identified in the Defendants' disclosures or disclosed during discovery.  The Court addresses each in turn.

Three witnesses fall into the first bucket.  Hall, Jinright, and Webster were all named in Reaves' initial disclosures. (Doc. 152-1 at 5–6, 8).  Accordingly, Reaves' motion to exclude these witnesses is due to denied. *See Gould v. Transamerica Life Ins. Co.*, 2012 WL 13048566, at *7 (S.D. Ala. Oct. 16, 2012) ("[A] party will not be allowed to insist on exclusion of witnesses whose relevance the party was already aware of, especially when that party has itself recognized the witnesses' importance by including them in the party's own Rule 26(a) disclosures." (alterations adopted) (citation omitted)).  Three witnesses fall into the second bucket—Bellinger, Lansford, and Carson.  The motion to exclude Bellinger and Lansford must also be denied because as the Defendants note, Reaves was aware of them and deposed them before the close of discovery. (Doc. 152 at 12; *see also* doc. 108-3 (Bellinger Deposition Transcript); *see also* doc. 108-25 (Lansford Deposition Transcript)).  Reaves was also aware of Carson's identity.  The Defendants shared his identity and a memorandum he prepared with Reaves during discovery. (Doc. 152 at 21–22).  Although the Defendants failed to disclose these witnesses in their initial disclosures, any failure was harmless, and so Reaves' motion to exclude is also due to be denied as to Bellinger, Lansford, and Carson.

One witness falls into the third bucket. The Defendants did not identify Graboys in their initial disclosures. However, his summary judgment evidence—an affidavit—is primarily used to summarize thirteen individuals' MPD employment records. (*See* doc. 110-15 at 2–6). The Defendants represent that Reaves received nine employment records during discovery, and that the other four individuals were either deposed by Reaves or otherwise known to her. (*See* doc. 152 at 13–18). The Court denies Reaves' motion to the extent it seeks to exclude this portion of Graboys' affidavit. *See Smoot v. Smoot*, 2015 WL 2340822, at *7 (S.D. Ga. Mar. 31, 2015) (refusing to exclude an affidavit under Rule 37 where the receiving party "had ample notice that [the affiant] had exactly the information she produce[d] in her affidavit").

Even if Reaves did not have official notice, the Defendants' failure to disclose was harmless. On balance, Graboys' affidavit simply summarizes evidence found elsewhere in the record or that could have been introduced through other witnesses. (Doc. 152 at 13–21). Thus, this portion of Graboys' affidavit should not be excluded, and Reaves' motion to exclude is due to be denied.[17] *See Brantley*, 112 F. Supp. 3d at 1358 (determining that a technical Rule 26(a) violation did not merit exclusion where the non-producing party's "partial non-compliance . . . caused no discernible harm").

### 2.    Exhibits

Reaves seeks to exclude twenty-five undisclosed documents included in the Defendants' evidentiary submissions in support of their motion for summary judgment.

---

[17] Nevertheless, because all of the information provided in Graboys' affidavit can be found elsewhere in the record, the Court does not rely on his affidavit in its analysis.

The Defendants respond that four of these documents (docs. 108-17, 108-18, 108-19, 110-2) were produced in discovery. (Doc. 152 at 23).  Four other documents (docs. 108-20, 109-11, 110-4, 110-9) were either referenced in Reaves' Operative Complaint or produced to the Defendants by Reaves during discovery. (*Id.* at 23–24).  The Defendants further contend that three other exhibits (docs. 108-5, 108-12, 111) were introduced by Reaves' counsel during the depositions of Albert Wheeler, Major Harris, and Mayor Reed. (*Id.* at 24).

Reaves seeks to exclude additional documents from previous lawsuits brought against the City by Lt. Ferguson, John Mackey ("Mackey"), Earl Ware, Jr. ("Ware"), and Webster. (*See* doc. 133 at 6–7).  The Court is not persuaded.  Reaves now seeks to exclude exhibits related to Ferguson, Mackey, Ware, and Webster—despite identifying these individuals and "[a]ll court filing and documents" related to their lawsuits in her initial disclosures. (*See* doc. 152-1 at 5–7, 11–12).  The Court will not exclude documents that Reaves had access to and which she knew to be relevant, as evidenced by their inclusion in her initial disclosures.[18]

## B.    The Defendants' Motion for Summary Judgment

Reaves' Operative Complaint spans seventy-pages and brings twenty-two claims against the Defendants. (*See* generally doc. 43).  Reaves' claims can be divided into federal and state law claims.  Under federal law, Reaves brings claims pursuant to:  the Fourteenth

---

[18] The Court's refusal to exclude any witnesses or exhibits is further supported by the fact that there is no evidence that the Defendants acted willfully or in bad faith. *See Brantley*, 112 F. Supp. 3d at 1358 (refusing to exclude evidence where "there [wa]s no allegation or evidence whatsoever of willful noncompliance or bad faith on the part of [the p]laintiffs that would warrant exclusion").

Amendment, under 42 U.S.C. § 1983 (Counts I, II, XII); 42 U.S.C. § 1981 (Counts III, IV, V, XI); Title VII (Counts VI, VII, VIII, IX, X, XI); and 42 U.S.C. § 1985 (Count XIII).[19] (*See id.* at 16–49, paras. 89–299.  Under Alabama law, Reaves brings the following claims: civil conspiracy (Count XIV); invasion of privacy (Count XV); intentional slander and libel per se (Count XVI); defamation – negligent libel and slander (Count XVII); negligent and wanton hiring, training, supervision, and retention (Count XVIII); breach of contract (Count XIX); breach of fiduciary duty and breach of duty of loyalty (Count XX); aiding and abetting breach of fiduciary duty and breach of duty of loyalty (Count XXI); and tortious interference with contractual or business relations (Count XXII).[20] (*See id.* at 49–67, paras. 300–418).

Upon consideration of Reaves' federal claims, the Court finds that the Defendants' motion for summary judgment is due to be granted.  And rather than consider the merits of her remaining state law claims, the Court declines to exercise supplemental jurisdiction. Reaves' state law claims are due to be dismissed on this basis.

## 1.    Federal Law Claims

### a.    Abandoned Claims

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resol. Tr. Corp.*

---

[19] Reaves brings Count XI under both 42 U.S.C. § 1981 and Title VII. (*See* doc. 43 at 41–46, paras. 249–81).

[20] On March 29, 2024, the Court dismissed Counts XIII (42 U.S.C. § 1985–conspiracy) and XIV (Alabama law–conspiracy) against Mayor Reed. (Doc. 89 at 22).  The Court found that "[c]onspiracy allegations solely against government entities and their agents are, by definition, barred by the intracorporate conspiracy doctrine." (*Id.* at 16–17).

*v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) (citing *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990)).  At summary judgment, Reaves can no longer "rely on [her] pleadings to avoid judgment against [her]." *Id.* (citing *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986)).  "Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id.* (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994)).

Reaves asks the Court to deny summary judgment but fails to articulate any genuine disputes of material fact.  Reaves cites no facts to support her claims and directs the Court to legal standards without analysis. (*See, e.g.*, doc. 140 at 3, 10–11).  Further, Reaves, without evidence, makes conclusory statements aimed at denying summary judgment. (*See, e.g.*, *id.* at 35 ("Defendants have no defense.")).  Though the Court permitted Reaves to refile the few pieces of evidence she cites in her response, (doc. 145 at 22–23, para. 8), Reaves' remedial filing still failed to point the Court to the relevant portions of each exhibit, (*see, e.g.*, doc. 154 at 1).  For example, Reaves conventionally filed approximately one hour of audio recordings without citation to where the relevant portion of "evidence can be found" in the audio file. (*id.* at 1; *see* doc. 96 at 2, Section 2).

The Court is not required to raise "an unmade theory . . . on its own." *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 758 F. App'x 785, 791 (11th Cir. 2018) (per curiam).  The Eleventh Circuit has made clear "that a legal claim or argument that has not been briefed before the [C]ourt is deemed abandoned and its merits

will not be addressed." *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). Additionally, the Court, in its Uniform Scheduling Order, cautioned Reaves that "[t]he failure to file a response to any motion—either dispositive or non-dispositive— within the time allowed by the Court shall indicate that there is no opposition to the motion." (Doc. 96 at 3, Section 6). Although Reaves filed a response, the Defendants' motion is substantively unopposed.

The Court finds that Reaves affirmatively abandoned all her federal claims. Reaves makes no attempt to oppose summary judgment on Counts II, III, V, VIII, IX, and X. (*See* doc. 140 at 6, 10, 11). Reaves labels these claims with headings but does not provide any analysis or evidence for the Court to find that a genuine dispute of material fact exists. (*See e.g., id.* at 11). Put simply, Reaves leaves the sections relating to Counts II, III, V, VIII, IX, and X *completely blank.* Reaves' attempt to address Counts VIII–X is instructive:

> H. **COUNT VIII – TITLE VII – SEX DISCRIMINATION CONSTRUCTIVE TERMINATION AND FORCED RETIREMENT AGAINST DEFENDANT CITY OF MONTGOMERY**
>
> I. **COUNT IX – TITLE VII – HOSTILE WORK ENVIRONMENT WORKPLACE HARASSMENT BY SUPERVISOR AGAINST DEFENDANT CITY OF MONTGOMERY**
>
> J. **COUNT X – TITLE VII – HOSTILE WORK ENVIRONMENT WORKPLACE HARASSMENT BY CO-WORKER AGAINST DEFENDANT CITY OF MONTGOMERY**
>
> K. **COUNT XI – 42 U.S.C. § 1981 AND TITLE VII RETALIATION AGAINST DEFENDANT CITY OF MONTGOMERY**

(*Id.* at 11). Again, Federal Rule of Civil Procedure 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992) (per curiam). The Court certainly does not have a duty to draft a party's argument,

locate evidence in the record to support it, and subsequently deny summary judgment on that basis. *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (noting that "district court judges are not required to ferret out delectable facts buried in a massive record"). Here, Counts II, III, V, VIII, IX, and X are not briefed *at all*. The Court declines Reaves' implicit invitation to serve as her advocate. Thus, Reaves forfeits Counts II, III, V, VIII, IX, and X, and the Defendants' summary judgment motion is due to be granted as to these counts.

The Court proceeds to address Reaves' remaining federal law claims: Counts I, IV, VI, VII, XI, XII, and XIII. (*See* doc. 140 at 3–19). Reaves' briefing on her remaining federal law claims proves equally unhelpful. Although Reaves "writes" in support of these claims, these sections do not contain any analysis, or citations to evidence. The Court considers each Count in turn.

In Count I—which alleges that the Mayor Reed, Dean, and Harris discriminated and harassed Reaves because of her race and/or sex in violation of the Equal Protection Clause—Reaves includes a lengthy recitation of case law generally applicable to discrimination and hostile work environment claims, but includes no facts relevant to her case or analysis applying the law to those facts. (*Id.* at 3–5; doc. 43 at 16–17, paras. 88–112). Thus, Reaves abandoned Count I. *See Flanigan's Enters., Inc. of Ga. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (per curiam) (parties waived an argument by "fail[ing] to elaborate or provide any citation of authority in support of the former allegation").

In Count IV—which alleges that the City racially discriminated against Reaves under 42 U.S.C. § 1981—Reaves cites the legal standard to "establish her prima facie case of race discrimination." (Doc. 140 at 6; doc. 43 at 25–27, paras. 149–61). Once again, Reaves devotes the bulk of this section to general law rather than any legal analysis of the facts of her case. Indeed, the closest Reaves comes to providing substantive legal analysis is when she declares that "Bennett . . . satisfie[s] the requisite showing of an adverse employment action" without citation to the record. (*Id.* at 10). The only problem with this summary, is that it concerns "Bennett," the plaintiff in another case, not Reaves. The Court will not address "this perfunctory and underdeveloped argument." *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007).

Counts VI (Title VII Sex Discrimination–Failure to Promote) and VII (Title VII Sex Discrimination–Demotion) suffer from the same infirmities. Reaves provides two sentences outlining how a plaintiff can "prove her claim of sex discrimination." (Doc. 140 at 10–11; doc. 43 at 29–32, paras. 173–95). But again, Reaves does not expand upon the legal standard, apply that standard to any evidence in the case, or otherwise support her claims in any meaningful way. Reaves has therefore abandoned Counts VI and VII. *See Jones v. Sec'y, Dep't of Corr.*, 607 F.3d 1346, 1353–54 (11th Cir. 2010) ("We have repeatedly required litigants to identify errors and provide arguments about their entitlement to relief. This rule means that a litigant who fails in his initial brief even to allege an error waives the right to relief based upon that allegation.").

Count XI—which alleges that the City retaliated against Reaves under 42 U.S.C. § 1981 and Title VII—just like the other abandoned Counts, consists of a one-paragraph

legal standard regarding how a plaintiff can "establish a prima facie retaliation claim." (Doc. 140 at 11–12).  Reaves concludes that "[o]nce [she] establishes her prima facie case, the burden shifts to [the City] to articulate a legitimate reason for the adverse action." (*Id.* at 12).  But Reaves does not establish a prima facie case—she does not explain how her demotion was causally related to her protected activity—nor what protected activity she engaged in.  Reaves has abandoned Count XI.

In Count XII—which alleges a violation of Reaves' Substantive Due Process Rights—Reaves explains that "[t]he evidence relevant to proving violations of Section 1983 is the same evidence that would be relevant to proving violations of the [Fifth] and [Fourteenth] Amendments." (*Id.* at 13).  She goes on to note that "he [sic] had property rights in his [sic] position with the [MPD]."[21] (*Id.* at 14).  Reaves fails to present any evidence, analysis, or argument in support of relief in Count XII.  Therefore, just as before, she has abandoned Count XII.

Reaves' final federal claim—Count XIII (Conspiracy to Violate Reaves' Civil Rights under 42 U.S.C. § 1985)—has also been abandoned. (Doc. 43 at 48–49, para. 292–99).  In her response, Reaves cites to case law regarding the legal standard associated with civil conspiracy without analysis. (*Id.* at 14–15).  Reaves fails to present any evidence, analysis, or argument in support of relief in Count XIII; thus, she has abandoned it.  The Court finds that because Reaves failed to address several claims, and did not provide any evidence, or analysis in opposition to summary judgment, that she abandoned all of her

---

[21] The Court understands the "he" referenced in Reaves' submission to be Chief Finley. (*See* doc. 122 in 2:23-cv-464-KKD).

federal claims. Therefore, the Defendants' motion for summary judgment is due to be granted as to Reaves' federal claims.

### b.    Alternative Summary Judgment Grounds

### i.    Count I:  Hostile Work Environment[22]

In her Operative Complaint, Reaves alleges that Mayor Reed, Deputy Dean, and Major Harris violated the Fourteenth Amendment's Equal Protection Clause by "intentionally discriminat[ing] against and harass[ing] Reaves because of her race and/or sex."[23] (Doc. 43 at 16–17, para. 90).  Reaves characterizes these actions as ones that "created a hostile work environment." (*Id.* at 17, para. 93).

"To establish a hostile work environment claim under the Equal Protection Clause . . . an employee (or former employee) must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [his or her] employment." *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004)). To prevail on a hostile work environment claim, Reaves must prove the following five elements:

> (1) [s]he "belongs to a protected group"; (2) [s]he "was subject to unwelcome harassment"; (3) the harassment was "based on a protected characteristic"; (4) the harassment was "sufficiently severe or pervasive to alter the conditions of" h[er] employment; and (5) h[er] employer was "responsible for" the hostile work environment.

---

[22] Reaves brings Count I against Mayor Reed, Deputy Dean, and Major Harris. (*See* doc. 43 at 16–20, paras. 89–113).

[23] The Court acknowledges that Reaves can no longer solely rely on her the allegations contained in her Operative Complaint.

*Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 774 (11th Cir. 2024) (quoting *Bryant*, 575 F.3d at 1296). Although Mayor Reed, Deputy Dean, and Major Harris concede that Reaves belongs to a protected group, they contest elements two through five of Reaves' hostile work environment claim. (Doc. 113 at 141).

"Hostile work environment claims do not address discrete, unpleasant acts." *Brannon v. Sec'y, Dep't of Veterans Affs.*, 2023 WL 1161129, at *5 (11th Cir. Jan. 31, 2023) (per curiam). It is unclear whether the discrete acts alleged by Reaves can be combined to form a cognizable hostile work environment claim.[24] *Id.* Reaves makes the following claims: (1) Deputy Dean made derogatory comments about her race and gender; (2) Deputy Dean targeted her for harassment "portraying her . . . as a racist [w]hite female"; (3) Mayor Reed and Deputy Dean encouraged black officers to file complaints against her; (4) Reaves' administrative leave was reduced; and (5) Reaves' car was forcibly removed and towed from her home. (Doc. 43 at 16–20, paras. 89–113).

The Court focuses on the fourth element of the test, whether a reasonable jury could conclude that the harassment Reaves suffered was sufficiently severe or pervasive. "To show that harassment was sufficiently severe or pervasive to alter the terms or conditions of h[er] employment, an employee must prove that h[er] work environment was both subjectively and objectively hostile." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020). Even assuming that Reaves can meet the subjective prong, the Defendants'

---

[24] The Court will assume arguendo, that Reaves' allegations constitute a cognizable hostile work environment claim.

motion for summary judgment is due to be granted because the Defendants' conduct was not objectively hostile.

The Court considers four factors to guide this inquiry: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* These four factors "will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted).

Reaves alleges that Dean "told [Reaves] that [she] work[s] for [Dean]." (Doc. 1-3 at 4). According to Reaves, Armstead informed her that she was "targeted because [Reaves] was white" and stated that "there were snakes in the bushes trying to take [Reaves] out and to watch [her] back." (Doc. 108-26 at 20, 74:21–75:4). Even if Reaves received some unwarranted comments, a reasonably jury could not find that Reaves' workplace was "'permeated with discriminatory intimidation, ridicule and insult,' in contrast to the 'mere utterance of an epithet.'" *Fernandez*, 961 F.3d at 1154 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Reaves does not provide evidence that she felt physically threatened. Reaves does not present evidence that the Defendants interfered with her job performance. Reaves also has not established the frequency of the actions sufficient to establish a hostile work environment. Reaves can no longer rely on her Operative Complaint, which states that "[t]he offensive acts, conduct[,] and statements were so severe or pervasive." (Doc. 43 at 17, para. 95). Because no reasonable jury could

32

find that the Defendants' conduct contributed to conditions that constituted an objectively hostile work environment based on Reaves' race and sex—the Defendants' motion for summary judgment is due to be granted as to Count I.

### ii.    Counts IV & VII:  Discriminatory Demotion

Reaves claims that the City, under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), violated her civil rights and discriminated against her because of her race (§ 1981) and sex (Title VII). (Doc. 43 at 25–27, paras. 149–61; *id.* at 31–32, paras. 184–95).  "Title VII prohibits employers from intentionally discriminating against their employees based on 'race, color, religion, sex, or national origin.'" *McCreight v. AuburnBank*, 117 F.4th 1322, 1326 (11th Cir. 2024); 42 U.S.C. § 2000e-2(a)(1).  Similarly, 42 U.S.C. § 1981 bars "employers from intentionally discriminating against employees based on their race." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1336 (11th Cir. 2024).  Reaves sued the City under Title VII for sex discrimination and § 1981 for race discrimination.   Both statutes "have the same burden of proof and use an identical analytical framework." *Id.* (citing *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023)); *see also James v. City of Montgomery*, 823 F. App'x 728, 733–34 (11th Cir. 2020) (analyzing race and sex discrimination claims together).   To prove her discrimination claims under either statute, Reaves "can use direct evidence, circumstantial evidence, or both." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023).

Reaves can survive summary judgment by putting forward "enough evidence for a reasonable jury to conclude that illegal discrimination occurred." *McCreight*, 117 F.4th at 1326.  She can meet this burden by making a prima facie case of unlawful discrimination

under the *McDonnell Douglas* framework or by showing a convincing mosaic of evidence to allow a reasonable jury to find unlawful discrimination. Although, at this stage, the Court must view the evidence in the light most favorable to Reaves and draw all reasonable inferences in her favor, the Court can only make inferences in Reaves' favor "based . . . on evidence—not on speculation." *Berry*, 84 F.4th at 1311 (quoting *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1058 (11th Cir. 2020)). In any event, Reaves has not put forward enough evidence for a reasonable jury to conclude that illegal discrimination occurred—"no matter how one looks at it." *McCreight*, 117 F.4th at 1335.

Reaves fails to establish a prima facie case of discrimination or a convincing mosaic such that a reasonable jury could conclude that illegal discrimination occurred. Under the *McDonnell Douglas* framework, Reaves bears the initial burden of establishing a prima facie case of discrimination by showing: (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse employment action; and (4) the City treated similarly-situated employees outside of her protected class more favorably. *Poer*, 100 F.4th at 1336; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Reaves succeeds in making out a prima facie case, the burden shifts to the City to articulate legitimate, nondiscriminatory reasons for its actions. *Poer*, 100 F.4th at 1336 (citations omitted). If the City articulates legitimate, nondiscriminatory reasons for its actions, the burden shifts back to Reaves to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Id.* (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993)). The asserted reason cannot be pretext "unless it is shown *both* that the reason was false, *and* that discrimination was

the real reason." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original)).

Here, Reaves fails to establish a prima facie case of discrimination. Reaves does not identify any similarly-situated employees outside of her protected classes that were treated more favorably. Reaves makes no summary-judgment attempt to show that similarly situated comparators received more favorable employment conditions. *See Smith v. Thomasville Ga.*, 753 F. App'x 675, 697 (11th Cir. 2018) (per curiam).

Even if Reaves properly established a prima facie case of unlawful discrimination under *McDonnell Douglas*, she would still have to show a genuine dispute as to whether the City's legitimate nondiscriminatory reasons for its actions are pretext for discrimination. The Defendants present evidence that Reaves' transfer to Major overseeing the Jail was done for legitimate nondiscriminatory reasons. As Interim Chief, Harris reassigned Reaves from "Chief of Operations to Major over the Jail." (Doc. 110-17 at 4, para. 12). To create more "efficient and effective" divisions, Harris restructured the MPD. (*Id.* at 4–5, para. 12). As part of her restructuring effort, Harris increased the number of divisions from five to eight and reassigned Reaves to head one of the new divisions. (*Id.* at 5, para. 12). Reaves and six other Majors were reassigned. (*Id.*). Harris reassigned Reaves to the Jail Division because "Reaves had been successful in her last assignment there." (*Id.*).

Reaves does not "cast sufficient doubt on [the City's] proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that [they] were not what actually motivated its conduct." *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1323–24 (11th Cir.

(quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).   The Court's inquiry into pretext "centers on the employer's beliefs about the employee's conduct, 'not the employee's beliefs' about her own actions." *Id.* at 1324 (citation omitted). Reaves can establish pretext by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [City's] proffered legitimate reasons for its action [such] that a reasonable factfinder could find them unworthy of credence." *Id.* (quoting *Combs*, 106 F.3d at 1538).  Reaves fails to show that the City's proffered legitimate reasons for her transfer—MPD restructuring and efficiency—are pretext for discrimination.

Nor has Reaves shown a "'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.6 (11th Cir. 2019) (en banc).  Reaves has not shown sufficient evidence that her discriminatory demotion claims can survive summary judgment.  Reaves fails to show that the reasons for her demotion were pretextual.  Reaves does not point to any comparators that were treated more favorably than her.  Without more, Reaves cannot meet her burden to show a convincing mosaic of evidence based on allegations in her Operative Complaint.  Thus, because Reaves failed to establish a prima facie case of discrimination under *McDonnell Douglas*, or a convincing mosaic of circumstantial evidence to allow a reasonably jury to find unlawful discrimination, the City's motion for summary judgment is due to be granted on Counts IV and VII.

### iii.    Count VI:  Failure to Promote

In Count VI, Reaves alleges that the City "subjected her to adverse and discriminatory treatment including denial of promotion" based on her sex. (Doc. 43 at 29–30, paras. 173–77).  Reaves can establish a prima facia case of failure-to-promote by showing: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for and applied for the promotion; (3) [s]he was rejected despite h[er] qualifications; and (4) other employees, who were equally or less qualified but were not members of the protected class, were promoted. *Sridej v. Brown*, 361 F. App'x 31, 34 (11th Cir. 2010) (per curiam).  Reaves claims that the City failed to promote her to the MPD's Interim Chief of Police.  However, Reaves never applied for the Interim Chief position. (Doc. 108-26 at 36, 138:15–23).  Reaves never showed interest or submitted any application materials regarding the open Interim Chief position. (*Id.* at 36, 139:3–5).  Therefore, Reaves cannot show that she applied or was rejected for the Interim Chief position.  Reaves fails to identify a genuine dispute of material fact on her failure to promote claim for sex discrimination. *See Anthony v. Georgia*, 69 F.4th 796, 807 (11th Cir. 2023).

### iv.    Count XI:   Retaliation

Reaves claims that the City of Montgomery retaliated against her "because she took steps to enforce her lawful rights" pursuant to 42 U.S.C. §§ 1981 and 2000e-3(a). (Doc. 43 at 41, para. 251).  Title VII makes it unlawful for an employer to retaliate "against any . . . employees . . . because [the employee] has opposed any [unlawful employment] practice" or because of the employee's participation in a Title VII investigation or hearing. 42 U.S.C. § 2000e-3(a); *see also Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1344, 1350 (11th Cir.

2022). "A Title VII retaliation claim based on circumstantial evidence, like the claim asserted by [Reaves] here, is ordinarily analyzed under the *McDonnell Douglas* burden-shifting framework." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021).

Under that framework, Reaves first must establish a prima facie case of retaliation by showing that: "(1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Johnson v. Miami-Dade County*, 948 F.3d 1318, 1325 (11th Cir. 2020) (per curiam) (citation omitted).

The burden then shifts to the employer to articulate legitimate reasons for the adverse employment action "to negate the inference of retaliation." *Fucron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016) (citation omitted). Assuming the employer offers a legitimate reason for the adverse employment action, the "burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the 'legitimate' reason is merely pretext for prohibited, retaliatory conduct." *Lapham v. Walgreen Co.*, 88 F.4th 879, 889 (11th Cir. 2023) (quoting *McAlpin v. Sneads*, 61 F.4th 916, 927 (11th Cir. 2023)). Reaves bears the "ultimate burden of persuasion." *Id.*

Reaves contends that she engaged in statutorily protected activities by filing a charge of discrimination with the EEOC and filing her April 2021 complaint with City Investigations. (Doc. 1-3 at 2; doc. 108-28 at 2). Following her complaint, the City failed to promote her and later demoted her. (Doc. 43 at 42, para. 258). Reaves filed her EEOC complaint on August 19, 2021. (*Id.* at 43, para. 265; doc. 1-3). Reaves claims that the City

retaliated against her in multiple ways:  (1) failed to promote Reaves for complaining about discrimination and harassment (doc. 43 at 42, para. 256); (2) demoted Reaves (*id.* at 42, paras. 258, 261); (3) reprimanded Reaves on August 30, 2021 (*id.* at 43, para. 266); and (4) forcibly removed and towed her car (*id.* at 44, paras. 268–69).

To establish a causal connection between Reaves' denied promotion and subsequent demotion and her protected activity, she must show "the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017) (citation omitted).  Reaves can show "the two events are not wholly unrelated if [she] shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.* (quoting *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010)).  If the protected conduct and adverse employment action occur in close temporal proximity, courts generally find that the plaintiff provides "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id.* (citation omitted).  However, "mere temporal proximity without more, must be 'very close'" to support a prima facie case of retaliation under *McDonnell Douglas*. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (citation omitted).

Interim Chief Harris demoted Reaves to Major Over the Jail.  The evidence in the record shows that Interim Chief Harris informed Mayor Reed on August 4, 2021, (before Reaves filed her EEOC Complaint) that she would reassign Reaves. (Doc. 110-17 at 3, para. 8).  Harris notes that Reaves did complain regarding workplace treatment and

informed her of the April 2021 claim against Barnes and Armstead. (*See* doc. 108-26 at 39, 149:3–150:2). Although Harris testified that she was aware of Reaves' April 2021 claim, Reaves leaves as undisputed the asserted fact that "this information did not play a role in [Harris'] decision to reassign Reaves. Her race and/or had nothing to do with [Harris'] decision to transfer her." (Doc. 110-17 at 3, para. 7). *See Culver*, 746 F.3d at 1302 n.22. Thus, Reaves fails to establish a causal link between her protected activity and the demotion. Indeed, the undisputed testimony is that the two actions were wholly unrelated.

### vi. Count XII: Substantive Due Process

Reaves alleges that the City violated her substantive due process rights under the Fourteenth Amendment. (Doc. 43 at 46–47, paras. 282–91). The City maintains that Reaves' Fourteenth Amendment substantive due process claim (Count XII) is due to be dismissed because the Substantive Due Process Clause does not protect public employment rights. (Doc. 153 at 33). The Fourteenth Amendment's Due Process Clause prevents states or their officials from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. "Due process has both a procedural and substantive component." *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1239 (11th Cir. Mar. 12, 2025) (citing *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997)).

The Substantive Due Process Clause "protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) (quotation and citation omitted). The Supreme Court has recognized a limited number of fundamental rights—namely, those "rights enumerated in the Bill of Rights" and "certain unenumerated rights." *Id.* Areas, however,

"in which substantive rights are created only by state law (as is the case with tort law and employment law)"—not involving fundamental rights—"are not subject to substantive due process protection" of the Fourteenth Amendment. *Id.*    Therefore, because "public employment law" falls under the category of "substantive rights . . . created only by state law," a right to continued employment is "not subject to substantive due process protection under the Due Process Clause." *Id.*

### vii.    Count XIII: Conspiracy to Violate Civil Rights

Reaves claims that the City and Mayor Reed conspired to deprive her of First Amendment Rights.[25]  Reaves' conspiracy claim is barred by the intracorporate conspiracy doctrine.  Specifically, "[t]he intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)).  The intracorporate conspiracy doctrine applies to public entities like the City and its personnel. *See Denney v. City of Albany*, 247 F.3d 1172, 1190–91 (11th Cir. 2001).  "[I]t is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000).

The City, like other artificial entities can only act through its agents.  Here, Reaves claims that Mayor Reed and the City conspired under 42 U.S.C. § 1985 to violate her First

---

[25] The Court understands Reaves' conspiracy claim to rely on her testimony that she was prevented from speaking at the April 6, 2021 Montgomery City Council Work Session. *See supra* Section V.B.7.

Amendment Rights. (Doc. 43 at 48, para. 293).  As explained above, it is impossible for the City and one of its agents, Mayor Reed, to conspire with itself. *See Dickerson*, 200 F.3d at 767.  Further, "this case does not involve even a single conspirator from outside [the City, a] public entity and does not involve any criminal conduct." *Id.* at 768.  Accordingly, Count XIII is due to be dismissed against the City.[26]

## 2.    State Law Claims[27]

Having found that Reaves' federal law claims are due to be dismissed, the Court turns to Reaves' state law claims.  The Court may, under 28 U.S.C. § 1367, exercise supplemental jurisdiction over state law claims when they are related to claims over which the Court has original jurisdiction.  The Court has original jurisdiction over Reaves' federal law claims under 28 U.S.C. §§ 1331 and 1343. *See supra* Section II.

---

[26] The Defendants argue they are entitled to qualified immunity on Counts I, II, XII, and XIII. (Doc. 113 at 219–24).  Qualified immunity protects government officials when they are "performing discretionary functions" and when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A defendant who asserts entitlement to qualified immunity "must first establish that he was acting within the scope of his discretionary authority." *Carter v. Butts County*, 821 F.3d 1310, 1319 (11th Cir. 2016).  Once the defendant has done so, "the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (quoting *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016)).  The plaintiff must show:  (1) that the officer violated a constitutional right; and (2) that this right was clearly established at the time of the violation. *Id.*  Here, the Court finds that the Defendants' actions were taken pursuant to their duties and constituted legitimate exercises of authority. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).  Because the Defendants acted within their discretionary authority, the burden on the qualified immunity issue shifts to Reaves.  Reaves must "prove that qualified immunity is not appropriate." *Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022) (per curiam).  The Court must consider "whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show [that] the officer's conduct violated a [federal] right." *Dukes v. Deaton*, 852 F.3d 1035, 1042 (11th Cir. 2017).  First, all of Reaves' federal claims were abandoned.  Second, even if Reaves had not abandoned her claims, she fails to meet her burden to show that the Defendants' conduct violated her constitutional rights.  Thus, the Defendants are entitled to qualified immunity, and Counts I, II, XII, and XIII are due to be dismissed against them on this independent basis.

[27] Because the Court declines to exercise supplemental jurisdiction over Reaves' state law claims, the Court pretermits discussion on the Defendants' invocation of state agent immunity and § 11-47-90 immunity under Alabama law. (Doc. 113 at 224–31).

However, under 28 U.S.C. § 1367(c), the Court may "'decline to exercise supplemental jurisdiction over a claim' if it has 'dismissed all claims over which it has original jurisdiction.'" *Harris-Billups ex rel. Harris v. Anderson*, 61 F.4th 1298, 1302 (11th Cir. 2023); 28 U.S.C. § 1367(c)(3). The decision to exercise supplemental jurisdiction over state law claims "rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam) (citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)). The Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Id.* at 1089.

When considering whether to exercise supplemental jurisdiction over pending state law claims, district courts may consider four factors: (1) judicial economy; (2) convenience; (3) fairness; and (4) comity. *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997); *see also Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994). The Court finds these factors weigh in favor of declining to exercise supplemental jurisdiction. "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Resolution of [Reaves'] state law claims depends on determinations of state law. State courts, not federal courts, should be the final arbiters of state law." *Baggett*, 117 F.3d at 1353. Alabama courts should resolve Reaves' remaining state law claims—especially in this instance, where Reaves' federal law claims were

dismissed before trial.[28] *Id.*  "[C]omity dictate[s] having these state law claims decided by the state courts." *Id.*  The Court cannot discern a reason why the remaining factors—convenience and fairness—weigh in favor of retaining jurisdiction over Reaves' claims that arise under Alabama law.[29]

Moreover, the Court can discern no significant prejudice to any party, particularly considering § 1367(d)'s provision tolling the statute of limitations on the state law claims. The Court declines to exercise supplemental jurisdiction and heeds the Eleventh Circuit's express advice—Reaves' state law claims are due to be dismissed without prejudice. *See Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) (explaining that when a court declines to exercise supplemental jurisdiction over state law claims in a case originally filed in federal court, the state law claims "should be dismissed without prejudice so that the claims may be refiled in the appropriate state court").

---

[28] This case is set for the Court's January 20, 2026 trial term. (Doc. 158 at 2, Section 1).

[29] The Court can decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) at summary judgment. *See, e.g.*, *Charles v. Johnson*, 18 F.4th 686, 691 (11th Cir. 2021) (affirming district court's decision to decline exercise of supplemental jurisdiction over pendent state law claims at summary judgment); *see also Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022) (noting that the district court's discretion to exercise supplemental jurisdiction "continues throughout the proceeding") (quoting *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984)).

## VII.  CONCLUSION

For the reasons stated, it is

ORDERED as follows:

1.       The Defendants' motion for summary judgment (doc. 107) as to Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, and XIII is GRANTED and these Counts are DISMISSED with prejudice.

2.       The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over Reaves' state law claims.  Accordingly, Counts XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, and XXII are DISMISSED without prejudice.

3.       This case is DISMISSED.

4.       A separate and final judgment will be entered.

DONE this 30th day of September, 2025.

       /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE